SPERRY *v.* FLORIDA EX REL. FLORIDA BAR.

No. 322.   Argued March 25, 1963.—
Decided May 27, 1963.

*Carlisle M. Moore* argued the cause for petitioner. With him on the briefs were *Oscar A. Mellin, LeRoy Hanscom* and *Jack E. Hursh.*

*F. Trowbridge vom Baur* argued the cause for respondent. With him on the brief were *Sherwood Spencer, J. Lewis Hall, Donald J. Bradshaw* and *John Houston Gunn.*

Briefs of *amici curiae,* urging reversal, were filed by *Solicitor General Cox, Acting Assistant Attorney General Guilfoyle, Louis F. Claiborne* and *Morton Hollander* for the United States; by *John R. Turney, D. W. Markham*

and *Nuel D. Belnap* for the Association of Interstate Commerce Commission Practitioners; by *Roger Robb* for the American Association of Registered Patent Attorneys and Agents; and by *Arthur B. Hanson* and *Emmett E. Tucker, Jr.* for the American Chemical Society.

Briefs of *amici curiae,* urging affirmance, were filed by *F. Trowbridge vom Baur, H. H. Perry, Jr., Wayland B. Cedarquist, Raymond Reisler* and *Warren H. Resh* for the American Bar Association; by *Lyman Brownfield* and *Phillip K. Folk* for numerous State Bar Associations; and by *William H. Webb* for the American Patent Law Association.

MR. CHIEF JUSTICE WARREN delivered the opinion of the Court.

Petitioner is a practitioner registered to practice before the United States Patent Office. He has not been admitted to practice law before the Florida or any other bar. Alleging, among other things, that petitioner "is engaged in the unauthorized practice of law, in that although he is not a member of The Florida Bar, he nevertheless maintains an office . . . in Tampa, Florida, . . . holds himself out to the public as a Patent Attorney . . . represents Florida clients before the United States Patent Office, . . . has rendered opinions as to patentability, and . . . has prepared various legal instruments, including . . . applications and amendments to applications for letters patent, and filed same in the United States Patent Office in Washington, D. C.," the Florida Bar instituted these proceedings in the Supreme Court of Florida to enjoin the performance of these and other specified acts within the State. Petitioner filed an answer in which he admitted the above allegations but pleaded as a defense "that the work performed by him for Florida citizens is solely that work which is presented to the United States Patent Office and that he charges fees solely for his work

of preparing and prosecuting patent applications and patent assignments and determinations incident to preparing and prosecuting patent applications and assignments." Thereupon, the court granted the Bar's motion for a summary decree and permanently enjoined the petitioner from pursuing the following activities in Florida until and unless he became a member of the State Bar:

"1. using the term 'patent attorney' or holding himself out to be an attorney at law in this state in any field or phase of the law (we recognize that the respondent according to the record before us has already voluntarily ceased the use of the word 'attorney');

"2. rendering legal opinions, including opinions as to patentability or infringement on patent rights;

"3. preparing, drafting and construing legal documents;

"4. holding himself out, in this state, as qualified to prepare and prosecute applications for letters patent, and amendments thereto;

"5. preparation and prosecution of applications for letters patent, and amendments thereto, in this state; and

"6. otherwise engaging in the practice of law."

The Supreme Court of Florida concluded that petitioner's conduct constituted the unauthorized practice of law which the State, acting under its police power, could properly prohibit, and that neither federal statute nor the Constitution of the United States empowered any federal body to authorize such conduct in Florida. 140 So. 2d 587.

In his petition for certiorari, petitioner attacked the injunction "only insofar as it prohibits him from engaging in the specific activities . . . [referred to above], covered by his federal license to practice before the Patent Office. He does not claim that he has any right otherwise to

engage in activities that would be regarded as the practice of law." [1] We granted certiorari, 371 U. S. 875, to consider the significant, but narrow, questions thus presented.

We do not question the determination that under Florida law the preparation and prosecution of patent applications for others constitutes the practice of law. *Greenough* v. *Tax Assessors,* 331 U. S. 486; *Murdock* v. *Memphis,* 20 Wall. 590. Such conduct inevitably requires the practitioner to consider and advise his clients as to the patentability of their inventions under the statutory criteria, 35 U. S. C. §§ 101–103, 161, 171, as well as to consider the advisability of relying upon alternative forms of protection which may be available under state law. It also involves his participation in the drafting of the specification and claims of the patent application, 35 U. S. C. § 112, which this Court long ago noted "constitute[s] one of the most difficult legal instruments to draw with accuracy," *Topliff* v. *Topliff,* 145 U. S. 156, 171. And upon rejection of the application, the practitioner may also assist in the preparation of amendments, 37 CFR §§ 1.117–1.126, which frequently requires written argument to establish the patentability of the claimed invention under the applicable rules of law and in light of the prior art. 37 CFR § 1.119. Nor do we doubt that Florida has a substantial interest in regulating the practice of law within the State and that, in the absence of federal legislation, it could validly prohibit nonlawyers from engaging in this circumscribed form of patent practice. [2]

---

[1] Petitioner's right to refer to himself as a "Patent Attorney" has been mooted by his voluntary discontinuance of the use of the term "attorney."

[2] See *Konigsberg* v. *State Bar of California,* 366 U. S. 36, 40–41; *Schware* v. *Board of Bar Examiners of New Mexico,* 353 U. S. 232, 239; *West Virginia State Bar* v. *Earley,* 144 W. Va. 504, 109 S. E. 2d 420; *Gardner* v. *Conway,* 234 Minn. 468, 48 N. W. 2d 788.

384

But "the law of the State, though enacted in the exercise of powers not contraverted, must yield" when incompatible with federal legislation. *Gibbons* v. *Ogden,* 9 Wheat. 1, 211. Congress has provided that the Commissioner of Patents "may prescribe regulations governing the *recognition* and conduct *of agents,* attorneys, *or other persons* representing applicants or other parties before the Patent Office," 35 U. S. C. § 31,[3] and the Commissioner, pursuant to § 31, has provided by regulation that "[a]n applicant for patent . . . *may be represented by an* attorney or *agent* authorized to practice before the Patent Office in patent cases." 37 CFR § 1.31. (Emphasis added.) The current regulations establish two separate registers "on which are entered the names of all persons recognized as *entitled to represent applicants* before the Patent Office in the preparation and prosecution of applications for patent." 37 CFR § 1.341. (Emphasis added.) One register is for attorneys at law, 37 CFR § 1.341 (a), and the other is for nonlawyer "agents." 37 CFR § 1.341 (b). A person may be admitted under either category only by establishing "that he is of good moral character and of good repute and possessed of the legal and scientific and technical qualifications necessary to enable him to render applicants for patents valuable service, and is otherwise competent to advise and assist them

----

[3] Act of July 19, 1952, c. 950, § 1, 66 Stat. 795, 35 U. S. C. § 31: "The Commissioner, subject to the approval of the Secretary of Commerce, may prescribe regulations governing the recognition and conduct of agents, attorneys, or other persons representing applicants or other parties before the Patent Office, and may require them, before being recognized as representatives of applicants or other persons, to show that they are of good moral character and reputation and are possessed of the necessary qualifications to render to applicants or other persons valuable service, advice, and assistance in the presentation or prosecution of their applications or other business before the Office."

in the presentation and prosecution of their applications before the Patent Office." 37 CFR § 1.341 (c).

The statute thus expressly permits the Commissioner to authorize practice before the Patent Office by nonlawyers, and the Commissioner has explicitly granted such authority. If the authorization is unqualified, then, by virtue of the Supremacy Clause, Florida may not deny to those failing to meet its own qualifications the right to perform the functions within the scope of the federal authority. A State may not enforce licensing requirements which, though valid in the absence of federal regulation, give "the State's licensing board a virtual power of review over the federal determination" that a person or agency is qualified and entitled to perform certain functions,[4] or which impose upon the performance of activity sanctioned by federal license additional conditions not contemplated by Congress.[5] "No State law can hinder or obstruct the free use of a license granted under an act of Congress." *Pennsylvania* v. *Wheeling & B. Bridge Co.*, 13 How. 518, 566.

Respondent argues, however, that we must read into the authorization conferred by the federal statute and regulations the condition that such practice not be inconsistent with state law, thus leaving registered practitioners with the unqualified right to practice only in the physical presence of the Patent Office and in the District of Columbia, where the Office is now located.

---

[4] *Miller, Inc.,* v. *Arkansas,* 352 U. S. 187, 190; *First Iowa Hydro-Electric Coop.* v. *Federal Power Comm'n,* 328 U. S. 152; cf. *Castle* v. *Hayes Freight Lines, Inc.,* 348 U. S. 61; *Cloverleaf Butter Co.* v. *Patterson,* 315 U. S. 148.

[5] *Rice* v. *Santa Fe Elevator Corp.,* 331 U. S. 218, 235–236; *Moran* v. *New Orleans,* 112 U. S. 69; *Sinnot* v. *Davenport,* 22 How. 227; *Gibbons* v. *Ogden,* 9 Wheat. 1; *Huron Portland Cement Co.* v. *Detroit,* 362 U. S. 440, 449 (dissenting opinion); cf. *Hill* v. *Florida,* 325 U. S. 538.

The only language in either the statute or regulations which affords any plausible support for this view is the provision in the regulations that "[r]egistration in the Patent Office . . . shall only entitle the persons registered to practice before the Patent Office." 37 CFR § 1.341. Respondent suggests that the meaning of this limitation is clarified by reference to the predecessor provision, which provided that registration "shall not be construed as authorizing persons not members of the bar to practice law." 3 Fed. Reg. 2429. Yet the progression to the more circumscribed language without more tends to indicate that the provision was intended only to emphasize that registration in the Patent Office does not authorize the general practice of patent law, but sanctions only the performance of those services which are reasonably necessary and incident to the preparation and prosecution of patent applications. That no more was intended is further shown by the contrast with the regulations governing practice before the Patent Office in trademark cases, also issued by the Commissioner of Patents. These regulations now provide that "[r]ecognition of any person under this section is not to be construed as sanctioning or authorizing the performance of any acts regarded in the jurisdiction where performed as the unauthorized practice of law." 37 CFR § 2.12 (d). The comparison is perhaps sufficiently telling. But any possible uncertainty as to the intended meaning of the Commissioner must be dispelled by the fact that when the present regulations were amended in 1948,[6] it was first proposed to add a provision similar to that appearing in the trademark regulations.[7] After objection had been leveled

---

[6] 13 Fed. Reg. 9596.

[7] Proposed Revision of Patent Rules § 5.1, 611 O. G. Pat. Off., June 29, 1948, Supp. 8:

"*Registration of attorneys and agents.* . . . Registration in the Patent Office under the provisions of these rules shall not be construed

against the revision on the ground that it "indicated that the office thinks that the states have the power to circumscribe and limit the rights of patent attorneys who are not lawyers," [8] the more sweeping language was deleted and the wording modified to its present form.

Bereft of support in the regulations, respondent directs us to the legislative history of the statute to confirm its understanding that § 31 and its predecessor provisions were not designed to authorize practice not condoned by the State. Insofar as this history provides any insight

---

as authorizing persons not members of the bar to practice law or to perform any acts regarded as practicing law in the jurisdiction where performed."

[8] "I think I know what you mean to say, but you have not said what you mean to say. If you stopped at the end of the first clause there and said that it does not authorize the persons not members of the bar to practice law, you might be closer to being right; but, as you have written it here, you have said that patent attorneys may not do in the states things which it may be necessary for them to do in order to prosecute their claims before the Patent Office.

"In other words, you are giving it to the states to say what a patent attorney may do rather than leaving it up to the Congress and to the laws of the United States.

"I may suggest that what patent attorneys do before the Patent Office might be construed as practicing law, were it not for the fact that their particular conduct is permitted by the acts of Congress and under the rules of the Patent Office.

"The states cannot pass laws derogating from the rights of the patent attorneys as created by Congress and existing under the rules of the Patent Office. I think that the rule, as proposed, makes it possible for the states, or indicated that the Office thinks that the states have the power to circumscribe and limit the rights of patent attorneys who are not lawyers, which rights are created under the laws of Congress, and subject to the rules of the Patent Office rather than to regulation by the individual states.

"I think you would have no power to pass this particular part of your proposed rule."

Remarks of A. P. Kane, Attorney, Hearing on Proposed Revision of Rules of Practice in Patent Cases, 281–282 (Sept. 30, 1948). See also id., at pp. 319–330.

into the intent of Congress, however, we are convinced that the interpretation which respondent asks us to give the statute is inconsistent with the assumptions upon which Congress has acted for over a century.

Examination of the development of practice before the Patent Office and its governmental regulation reveals that: (1) nonlawyers have practiced before the Office from its inception, with the express approval of the Patent Office and to the knowledge of Congress; (2) during prolonged congressional study of unethical practices before the Patent Office, the right of nonlawyer agents to practice before the Office went unquestioned, and there was no suggestion that abuses might be curbed by state regulation; (3) despite protests of the bar, Congress in enacting the Administrative Procedure Act refused to limit the right to practice before the administrative agencies to lawyers; and (4) the Patent Office has defended the value of nonlawyer practitioners while taking steps to protect the interests which a State has in prohibiting unauthorized practice of law. We find implicit in this history congressional (and administrative) recognition that registration in the Patent Office confers a right to practice before the Office without regard to whether the State within which the practice is conducted would otherwise prohibit such conduct.

The power of the Commissioner of Patents to regulate practice before the Patent Office dates back to 1861, when Congress first provided that "for gross misconduct he may refuse to recognize any person as a patent agent, either generally or in any particular case . . . ." [9] The "Rules and Directions" issued by the Commissioner in 1869 provided that "[a]ny person of intelligence and good moral character may appear as the attorney in fact or agent of

---

[9] Act of March 2, 1861, c. 88, § 8, 12 Stat. 247; see also Act of July 8, 1870, c. 230, § 19, 16 Stat. 200, as amended, 66 Stat. 793, 35 U. S. C. § 6.

an applicant upon filing proper power of attorney."[10]
From the outset, a substantial number of those appearing
in this capacity were engineers or chemists familiar with
the technical subjects to which the patent application
related. "Many of them were not members of the bar.
It probably never occurred to anybody that they should
be."[11] Moreover, although a concentration of patent
practitioners developed in Washington, D. C., the regula-
tions have provided since the reorganization of the Patent
Office in 1836 that personal attendance in Washington is
unnecessary and that business with the Office should
be transacted in writing.[12] The bulk of practitioners are
now scattered throughout the country, and have been
so distributed for many years.[13] As a practical matter, if

[10] Rules and Directions for Proceedings in the Patent Office, § 127
(Aug. 1, 1869).

[11] Letter from Edward S. Rogers, Hearings before House Com-
mittee on Patents on H. R. 5527, 70th Cong., 1st Sess. 84 (1928);
cf. *Hoosier Drill Co.* v. *Ingels*, 15 O. G. Pat. Off. 1013; 2 Robinson,
Patents, § 431.

[12] "Personal attendance of the applicant at the Patent Office, to
obtain a patent, is unnecessary. The business can be done by cor-
respondence, (free of postage) or by power of attorney." Informa-
tion to Persons Having Business to Transact at the Patent Office,
8 (July 1836). In 1854, it was first provided that "[a]ll business
with the office should be transacted in writing. . . ." Rules and
Directions for Proceedings in the Patent Office, § 122 (Feb. 20, 1854).
Compare 37 CFR § 1.2.

[13] Roster of Attorneys and Agents Registered to Practice Before
the U. S. Patent Office (1958); Names and Addresses of Attorneys
Practicing Before the U. S. Patent Office (1883); Testimony of T. E.
Robertson, Commissioner of Patents, Hearings before House Com-
mittee on Patents on H. R. 699, 71st Cong., 2d Sess. 12. Com-
mencing in 1848, the Commissioner for many years informed inventors
that "[i]f the services of Patent Agents are desired, able and com-
petent persons engaged in that business can be found at their offices
*in this city, and in other cities.*" Information to Persons Having
Business to Transact at the Patent Office, Patent Agents or Attorneys
(1848). (Emphasis deleted and added.)

practitioners were not so located, and thus could not easily consult with the inventors with whom they deal, their effectiveness would often be considerably impaired.[14] Respondent's suggestion that practice by nonlawyers was intended to be confined to the District of Columbia thus assumes either congressional ignorance or disregard of long-established practice.

Despite the early recognition of nonlawyers by the Patent Office, these agents, not subject to the professional restraints of their lawyer brethren, were particularly responsible for the deceptive advertising and victimization of inventors which long plagued the Patent Office.[15] To remedy these abuses, the Commissioner of Patents in 1899 first required registration of persons practicing before the Patent Office [16] and, in 1918, required practitioners to obtain his prior approval of all advertising material which they distributed.[17] It was to reach these same evils that § 31 was given much its present form when, in 1922, the statute was amended to expressly authorize the Commissioner to prescribe regulations for the recognition of agents and attorneys.[18]

---

[14] See Berle, Inventions and Their Management, 189–190; Hoar, Patent Tactics and Law (3d ed.), 256–257; Woodling, Inventions and Their Protection (2d ed.), 289–290, 333; Rivise, Preparation and Prosecution of Patent Applications, § 42.

[15] See Hearings before House Committee on Patents on H. R. 5527, 70th Cong., 1st Sess. 16–18; 69 Cong. Rec. 6580; Spencer, The United States Patent Law System, 94–96. Berle, 184–186. Compare H. R. Rep. No. 1622, 68th Cong., 2d Sess. 2–3; H. R. Rep. No. 364, 64th Cong., 1st Sess. 2; Information to Persons Having Business to Transact at the Patent Office, Patent Agents or Attorneys (1848).

[16] Rules of Practice in the United States Patent Office, § 17 (July 18, 1899). Compare § 17 in the edition of June 18, 1897.

[17] 252 O. G. Pat. Off. 967. Compare 37 CFR § 1.345.

[18] Act of February 18, 1922, c. 58, § 3, 42 Stat. 390. Compare Act of July 8, 1870, c. 230, § 19, 16 Stat. 200, as amended, 35 U. S. C. § 6, and Act of July 4, 1884, c. 181, § 5, 23 Stat. 101, 5 U. S. C. § 493.

This modification of the statute, first proposed in 1912, was designed to provide for the "creation of a patent bar" and "to require a higher standard of qualifications for registry." [19]  Although it was brought to the attention of the House Committee on Patents that practitioners included lawyers and nonlawyers alike,[20] it was never suggested that agents would be subject to exclusion.  In fact, although the Commissioner of Patents had at one time expressed the view that Patent Office abuses could be eliminated only by restricting practice to lawyers,[21]

---

[19] Letter from E. B. Moore, Commissioner of Patents, Hearings before House Committee on Patents on H. R. 23417, No. 1, 62d Cong., 2d Sess. 6–7.  See also Hearings before House Committee on Patents on H. R. 210, 67th Cong., 1st Sess. 16; Commissioner of Patents, Annual Report, xii (1908).

[20] The following colloquy regarding an identical bill introduced the session before passage occurred between Congressman Himes and the Commissioner of Patents:

"Mr. Himes. It seems to me that we should know just who the man practicing before the Patent Office happens to be.  Must he be a member of the bar or are the requirements the same for the patent attorney who simply goes and gets a patent for his clients as the man that goes and practices before the Patent Office, before the Commissioner of Patents?

"Mr. Robertson. The Patent Office can register anyone who shows a degree of proficiency necessary to write specifications, whether or not he is a member of the bar.

"Mr. Himes. He must not be a member of the bar?

"Mr. Robertson. He need not be a member of the bar.  That is not as bad as it sounds.  Some of our best practitioners are not members of the bar.  They are the older line of attorneys.  There are some very fine ones who have been practicing before the Patent Office 30 or 40 years who are not members of the bar, but they are honest men, and there are some of the practitioners who are members of the bar who are not honest men.  So it is a very difficult thing to reach."  Hearings before House Committee on Patents on H. R. 210; 67th Cong., 1st Sess. 15–16.
See also Hearings before House Committee on Patents on H. R. 5011, 5012, 7010, 66th Cong., 1st Sess. 281.

[21] Commissioner of Patents, Annual Report, vi (1893).

his successor concluded that such a limitation would be unwise and during the pendency of this legislation recommended to Congress against such a limitation:

> "It has been suggested many times that the privilege of practising before the Office should be granted only after examination similar to examinations held for admission to the bar. It is believed that this requirement would be too severe, as many persons not specially trained in the law and without any particular educational advantages may by careful study of the practice and of the useful arts learn adequately to prosecute applications. Fundamentally knowledge of the invention is more important than knowledge of the rules and is often possessed by men of a type of mind which does not acquire legal knowledge readily." [22]

Moreover, during the consideration in 1916 of another bill enacted to curb abusive advertising by patent practitioners, by prohibiting persons practicing before government agencies from using the names of government officials in their advertising literature,[23] the same point was made on the floor of the House:

> "Mr. OGLESBY. I will say to the gentleman that a good many men appear before the Patent Office who are not admitted attorneys. The commissioner stated at the hearing that he had considered the question as to whether or not anyone except a regularly admitted attorney at law should be excluded from practicing before the Patent Office, but for certain reasons thought, perhaps, he ought not to establish such a rule." [24]

---

[22] Commissioner of Patents, Annual Report, xiv (1915).
[23] Act of April 27, 1916, c. 89, 39 Stat. 54.
[24] 53 Cong. Rec. 6313.

Disclosure that persons were falsely holding themselves out to be registered patent practitioners led in 1938 to the enactment of legislation making such misrepresentation a criminal offense.[25] This corrective legislation was under consideration for over a decade and originally contained several other provisions, including one which would have prohibited any person "duly registered to practice in the Patent Office . . . [from holding] himself out as a patent attorney, patent lawyer, patent solicitor, or patent counselor unless he is legally admitted to practice law in the State . . . or in the District of Columbia." [26] During the extended consideration given the matter in both Houses of Congress, the distinction between patent lawyers, who had been admitted to the bar, and nonlawyer agents, was repeatedly brought out; [27] time and again it was made clear that the above provision was not intended to restrict practice by agents, but was designed only to prevent them from labeling themselves "patent attorneys," [28] as the Patent Office had theretofore permitted.[29]

[25] Act of May 9, 1938, 52 Stat. 342; now 66 Stat. 796, 35 U. S. C. § 33.

[26] This was the so-called "Cramton bill," H. R. 699, 71st Cong., 2d Sess.; H. R. 5527, 70th Cong., 1st Sess.; H. R. 5811, 69th Cong., 1st Sess.; H. R. 10735, 69th Cong., 1st Sess.; H. R. 5790, 68th Cong., 1st Sess.

[27] E. g., 69 Cong. Rec. 6580; Hearings before Senate Committee on Patents on H. R. 5527, 70th Cong., 1st Sess. 4–7, 51; Hearings before House Committee on Patents on H. R. 699, 71st Cong., 2d Sess. 34, 49.

[28] E. g., 69 Cong. Rec. 6580; S. Rep. No. 628, 71st Cong., 1st Sess. 4; Hearings before Senate Committee on Patents on H. R. 5527, 70th Cong., 1st Sess. 7, 59; Hearings before House Committee on Patents on H. R. 5527, 70th Cong., 1st Sess. 14–25, 28–33, 56–76, 85–100; Hearings before Senate Committee on Patents on H. R. 699, 71st Cong., 2d Sess. 3, 5, 10; Hearings before House Committee on Patents on H. R. 699, 71st Cong., 2d Sess. 2–5, 41.

[29] Prior to 1938, the Patent Office listed both lawyers and nonlawyers on a single register and referred to both as Patent Attorneys. The

The proposed bills would not have affected "any engineers or draftsmen from doing those things which they have always been doing before the Patent Office"; [30] the bills sought "to bring about no change in the status of the many men now registered and *entitled to practice before the Patent Office,* regardless of whether they are members of the bar or not . . . ." [31] (Emphasis added.) "[T]here are quite a number of solicitors of patents who are highly qualified and who are not members of the bar, who never graduated at law and were never admitted to the bar. But this bill doesn't disqualify those men. *They can continue to qualify as patent agents.*" [32] (Emphasis added.) When asked "[w]hat is going to be the difference in the legal prerogatives of the agents and the others that come in," the Commissioner of Patents responded that "[t]*heir rights in the Patent Office will be exactly the same.* Their rights in the courts will be dif-

---

legislation which was proposed would not have prohibited nonlawyers previously registered from continuing to use this appellation. *E. g.,* H. R. Rep. No. 947, 70th Cong., 1st Sess. 4. Although the several bills containing this provision failed to gain approval (though passing the House repeatedly), in 1938, the Commissioner, following suggestions made to him during the course of the Committee hearings, Hearings before House Committee on Patents on H. R. 5811, 69th Cong., 1st Sess. 46; Hearings before House Committee on Patents on H. R. 5527, 70th Cong., 1st Sess. 20, 26–27, established separate registers for lawyers and for nonlawyer agents, 495 O. G. Pat. Off. 715, and has since prohibited agents so registered from representing themselves to be attorneys, solicitors or lawyers. See 37 CFR §§ 1.341, 1.345. The registration of those agents previously enrolled on the single register, of whom petitioner is one, was not changed.

[30] S. Rep. No. 1209, 70th Cong., 1st Sess. 1.

[31] H. R. Rep. No. 947, 70th Cong., 1st Sess. 4; S. Rep. No. 626, 71st Cong., 2d Sess. 4; H. R. Rep. No. 728, 71st Cong., 2d Sess. 3.

[32] Statement of E. W. Bradford, Chairman of the Committee on Ethics of the American Patent Law Association, Hearings before House Committee on Patents on H. R. 699, 71st Cong., 2d Sess. 61.

ferent." [33] (Emphasis added.) The House debates on the bill before Congress in 1930 reveal the same understanding:

> "Mr. STAFFORD. . . . I was under the impression that hereafter a person in order to practice before the Patent Office must be admitted to practice before some bar of a State.
>
> "Mr. LaGUARDIA. That is my understanding.
>
> "Mr. PERKINS. I will correct myself. He may be admitted to act as a patent agent, but after the passage of this act no one who is not admitted to the bar generally can hold himself out to be a patent attorney, patent lawyer, patent solicitor, or patent counselor.
>
> "Mr. STAFFORD. A person without being a member of the bar may be registered as a patent agent to practice before the Commissioner of Patents?
>
> "Mr. PERKINS. He may." [34]

Hence, during the period the 1922 statute was being considered, and prior to its readoption in 1952,[35] we find strong and unchallenged implications that registered agents have a right to practice before the Patent Office. The repeated efforts to assure Congress that no attempt was being made to limit this right are not without significance. Nor is it insignificant that we find no suggestion that the abuses being perpetrated by patent agents could or should be corrected by the States. To the contrary, reform was effected by the Patent Office, which now requires all practitioners to pass a rigorous examination,

---

[33] Hearings before House Committee on Patents on H. R. 5527, 70th Cong., 1st Sess. 15.

[34] 72 Cong. Rec. 5467.

[35] No changes of substance were intended by the 1952 revision. S. Rep. No. 1979, 82d Cong., 2d Sess. 4; H. R. Rep. No. 1923, 82d Cong., 2d Sess. 6.

37 CFR § 1.341 (c), strictly regulates their advertising, 37 CFR § 1.345, and demands that "[a]ttorneys and agents appearing before the Patent Office . . . conform to the standards of ethical and professional conduct generally applicable to attorneys before the courts of the United States." 37 CFR § 1.344.

Moreover, the extent to which specialized lay practitioners should be allowed to practice before some 40-odd federal administrative agencies, including the Patent Office, received continuing attention both in and out of Congress during the period prior to 1952.[36] The Attorney General's Committee on Administrative Procedure which, in 1941, studied the need for procedural reform in the administrative agencies, reported that "[e]specially among lawyers' organizations there has been manifest a sentiment in recent years that only members of the bar should be admitted to practice before administrative agencies. The Committee doubts that a sweeping interdiction of nonlawyer practitioners would be wise . . . ."[37] Ultimately it was provided in § 6 (a) of the Administrative Procedure Act that "[e]very party shall be accorded the right to appear in person or by or with counsel or other duly qualified representative in any agency proceeding. . . . Nothing herein shall be construed either to grant or to deny to any person who is not a lawyer the

---

[36] See Committee on Administrative Practice of the Bar Association of the District of Columbia, Report on Admission to and Control Over Practice Before Federal Administrative Agencies (1938); Survey of the Legal Profession, Standards of Admission for Practice Before Federal Administrative Agencies (1953); House Committee on Government Operations, Survey and Study of Administrative Organization, Procedure, and Practice in the Federal Agencies, 85th Cong., 1st Sess. (Comm. Print); Note, Proposed Restriction of Lay Practice Before Federal Administrative Agencies, 48 Col. L. Rev. 120.

[37] Attorney General's Committee on Administrative Procedure, Final Report, 124 (1941). Compare Commission on Organization of the Executive Branch of the Government, Report to the Congress on Legal Services and Procedure, 32–35, 40–44 (1955).

right to appear for or represent others before any agency or in any agency proceeding." 60 Stat. 240, 5 U. S. C. § 1005 (a). Although the act thus disavows any intention to change the existing practice before any of the agencies, so that the right of nonlawyers to practice before each agency must be determined by reference to the statute and regulations applicable to the particular agency, the history of § 6 (a) contains further recognition of the power of agencies to admit nonlawyers, and again we see no suggestion that this power is in any way conditioned on the approval of the State. The Chairman of the American Bar Association's committee on administrative law testified before the House Judiciary Committee:

"A great deal of complaint has been received from two sources. Number one is the lay practitioners before the various agencies, chiefly the Interstate Commerce Commission, who are afraid something might be said that would oust them from practice. On the other hand, there is a great deal of protest from the committees on unauthorized practice of the law in various State, local, and municipal bar associations who are just as vehement in saying that these measures fail to recognize that legal procedure must be confined to lawyers. But these bills do not eliminate the lay practitioner, if the administrative agency feels they have a function to perform and desires to admit him to practice." [38]

Despite the concern of the bar associations, the Senate Judiciary Committee reported that "nonlawyers, if permitted by the agency to practice before it, are not excluded from representing interested parties in adminis-

---

[38] Hearings before House Committee on the Judiciary on Federal Administrative Procedure, 79th Cong., 1st Sess. (Serial No. 19) 33–34, Legislative History of the Administrative Procedure Act, S. Doc. No. 248, 79th Cong., 2d Sess. 79–80 (hereinafter referred to as "Legislative History").

trative matters." [39]  And in the House debates on this provision we find the following instructive passage:

"Mr. AUSTIN. Mr. President, before the Senator leaves that thought, I wish to ask a question. I notice . . . in the section to which the Senator is referring, this language:

" 'Nothing herein shall be construed either to grant or to deny to any person who is not a lawyer the right to appear for or represent others before any agency or in any agency proceeding.'

"Is it not a fact that somewhere in the bill the distinguished Senator has reserved the right to a non-professional—that is, a man who is not a lawyer—to appear, if the agency having jurisdiction permits it? That is, there is a discretion permitted, is there not? For example, take a case where a scientific expert would better represent before the Commission the interests involved than would a lawyer. The right to obtain that privilege is granted in the bill somewhere, is it not?

"Mr. McCARRAN. The Senator is correct; and in connection with that I wish to read from the Attorney General's comment, as follows:

" 'This subsection does not deal with, or in any way qualify, the present power of an agency to regulate practice at its bar. It expressly provides, moreover, that nothing in the act shall be construed either to grant or to deny the right of nonlawyers to appear before agencies in a representative capacity. *Control over this matter remains in the respective agencies.*'

"That is the Attorney General's observation." [40] (Emphasis added.)

---

[39] S. Comm. Print on S. 7, 79th Cong., 1st Sess. 10 (June 1945), Legislative History 26.

[40] 92 Cong. Rec. 2156, Legislative History 316–317.

It is also instructive to note that shortly after the adoption of the Administrative Procedure Act, the American Bar Association proposed the adoption of an "Administrative Practitioners Act." [41] Though limiting the powers of nonattorneys in respects not here relevant, the bill did provide that "authorized participation in agency proceedings" was permissible, without regard to whether the conduct constituted the practice of law in the State where performed.[42]

Indicative of this same general understanding, we note that every state court considering the problem prior to 1952 agreed that the authority to participate in administrative proceedings conferred by the Patent Office and by

---

[41] H. R. 2657, 80th Cong., 1st Sess. See Curry, Bills in Congress Sponsored by American Bar Association Seek to Prevent Nonlawyers From Practicing Before the Interstate Commerce Commission, 14 I. C. C. Pract. J. 491.

[42] "Credentials for Agents

"SEC. 6. If any agency shall find it necessary in the public interest and in the interest of parties to agency proceedings before it to authorize practice by individuals not subject to section 5 and provides by generally applicable rule therefor in any case in which the governing statute does not provide only for appearances in person or by attorney or counsel, any such individual may be admitted hereunder to practice as an agent before such agency except in proceedings pursuant to section 7 or 8 of the Administrative Procedure Act or in connection with any form of compulsory process. . . . On application, individuals subject to this section who have been individually authorized to practice before any agency, have maintained such standing, are actively engaged in practice so permitted, and are so certified by the agency with a specification of the extent to which they have been so qualified to practice and have practiced shall be given credentials enabling them to continue such practice. No agency, and nothing in this Act, shall be deemed to permit any person to practice law in any place or render service save the authorized participation in agency proceedings by holders of credentials; and no person shall hold himself out, impliedly or expressly, as otherwise authorized hereunder."

other federal agencies was either consistent with or preemptive of state law.[43]

Finally, regard to the underlying considerations renders it difficult to conclude that Congress would have per-

[43] *Chicago Bar Assn.* v. *Kellogg*, 338 Ill. App. 618, 88 N. E. 2d 519 (1949) (Patent Office); *Sharp* v. *Mida's Research Bureau*, 45 N. Y. S. 2d 690 (1943), aff'd, 48 N. Y. S. 2d 799 (1944) (Patent Office); *Schroeder* v. *Wheeler*, 126 Cal. App. 367, 14 P. 2d 903 (1932) (Patent Office); *People ex rel. Colorado Bar Assn.* v. *Erbaugh*, 42 Colo. 480, 94 P. 349 (1908) (Patent Office) (by implication); *In re New York County Lawyers Assn.* (*In re Bercu*), 273 App. Div. 524, 534–535, 78 N. Y. S. 2d 209, 218 (1948), aff'd, 299 N. Y. 728, 87 N. E. 2d 451 (1949) (Treasury and Tax Court) (by implication); *Auerbacher* v. *Wood*, 139 N. J. Eq. 599, 604, 53 A. 2d 800, 803 (1947), aff'd, 142 N. J. Eq. 484, 59 A. 2d 863 (1948) (N. L. R. B.); *De Pass* v. *B. Harris Wool Co.*, 346 Mo. 1038, 144 S. W. 2d 146 (1940) (I. C. C.); *Blair* v. *Motor Carriers Service Bureau, Inc.*, 40 Pa. D. & C. 413, 426 (1939) (I. C. C.); *Bennett* v. *Goldsmith*, 280 N. Y. 529, 19 N. E. 2d 927 (1939) (Immigration Department); *Public Service Traffic Bureau, Inc.*, v. *Haworth Marble Co.*, 40 Ohio App. 255, 178 N. E. 703 (1931) (I. C. C.) (dictum); *In re Gibbs*, 35 Ariz. 346, 355, 278 P. 371, 374 (1929) (Land Office) (dictum); *Mulligan* v. *Smith*, 32 Colo. 404, 76 P. 1063 (1904) (Land Office); see also *In re Lyon*, 301 Mass. 30, 16 N. E. 2d 74 (1938) (bankruptcy); *Brooks* v. *Mandel-Witte Co.*, 54 F. 2d 992 (C. A. 2d Cir.), cert. denied, 286 U. S. 559 (1932) (Customs Court). Compare *Lowell Bar Assn.* v. *Loeb*, 315 Mass. 176, 184–185, 52 N. E. 2d 27, 33–34 (1943) (Treasury and Tax Court).

Normally, the state courts have deemed the authority granted by the federal agency to be closely circumscribed. *E. g.*, *Chicago Bar Assn.* v. *Kellogg, supra; In re Lyon, supra; Public Service Traffic Bureau, Inc.*, v. *Haworth Marble Co., supra.*

In recent years divergence in opinion has developed. Compare *Battelle Memorial Inst.* v. *Green*, 133 U. S. P. Q. 49 (Ohio Ct. App. 1962) (Patent Office), and *Noble* v. *Hunt*, 95 Ga. App. 804, 99 S. E. 2d 345 (1957) (Treasury and Tax Court), with *Agran* v. *Shapiro*, 127 Cal. App. 2d Supp. 807, 273 P. 2d 619 (App. Dept. Super. Ct., 1954) (Treasury); *Wisconsin* v. *Keller*, 16 Wis. 2d 377, 114 N. W. 2d 796, now pending on certiorari as No. 429, 1962 Term (I. C. C.); *Petition of Kearney*, 63 So. 2d 630 (Fla. 1953) (Treasury and Tax

mitted a State to prohibit patent agents from operating within its boundaries had it expressly directed its attention to the problem. The rights conferred by the issuance of letters patent are federal rights. It is upon Congress that the Constitution has bestowed the power "To promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries," Art. I, § 8, cl. 8, and to take all steps necessary and proper to accomplish that end, Art. I, § 8, cl. 18, pursuant to which the Patent Office and its specialized bar have been established. The Government, appearing as *amicus curiae,* informs the Court that of the 7,544 persons registered to practice before the Patent Office in November 1962, 1,801 were not lawyers and 1,687 others were not lawyers admitted to the bar of the State in which they were practicing.[44]   Hence, under the respondent's view, one-quarter of the present practitioners would be subject to disqualification or to relocation in the District of Columbia and another one-fourth, unless reciprocity provisions for admission to the bar of the State in which they are practicing are available to them, might be forced to relocate, apply for admission to the State's bar, or discontinue practice. The disruptive effect which

Court); cf. *Marshall* v. *New Inventor's Club, Inc.,* 69 O. L. Abs. 578, 117 N. E. 2d 737 (C. P. 1953) (Patent Office).

State courts have frequently held practice before state administrative agencies by nonlawyers to constitute the unauthorized practice of law.  *E. g., People ex rel. Chicago Bar Assn.* v. *Goodman,* 366 Ill. 346, 8 N. E. 2d 941, 111 A. L. R. 1, cert. denied, 302 U. S. 728; *Clark* v. *Austin,* 340 Mo. 467, 101 S. W. 2d 977.  But compare *State ex rel. Reynolds* v. *Dinger,* 14 Wis. 2d 193, 109 N. W. 2d 685; *Realty Appraisals Co.* v. *Astor-Broadway Holding Corp.,* 5 App. Div. 2d 36, 169 N. Y. S. 2d 121.

[44] Of the 73 patent practitioners in Florida, 62 are not members of the Florida Bar.

this could have upon Patent Office proceedings cannot be ignored. On the other hand, the State is primarily concerned with protecting its citizens from unskilled and unethical practitioners,[45] interests which, as we have seen, the Patent Office now safeguards by testing applicants for registration, and by insisting on the maintenance of high standards of integrity. Failure to comply with these standards may result in suspension or disbarment. 35 U. S. C. § 32; 37 CFR § 1.348. So successful have the efforts of the Patent Office been that the Office was able to inform the Hoover Commission that "there is no significant difference between lawyers and nonlawyers either with respect to their ability to handle the work or with respect to their ethical conduct." [46]

Moreover, since patent practitioners are authorized to practice only before the Patent Office, the State maintains control over the practice of law within its borders except to the limited extent necessary for the accomplishment of the federal objectives.[47]

---

[45] *Hexter Title & Abstract Co.* v. *Grievance Committee,* 142 Tex. 506, 509, 179 S. W. 2d 946, 948; *Lowell Bar Assn.* v. *Loeb,* 315 Mass. 176, 180, 52 N. E. 2d 27, 31. Commission on Organization of the Executive Branch of the Government, Report of the Task Force on Legal Services and Procedure, Part VI, Appendices and Charts, 169 (1955).

[46] *Id.,* 158. The Patent Office noted the qualification that nonlawyers are able to advertise. Compare Hearings before House Committee on Patents on H. R. 5527, 70th Cong., 1st Sess. 16–19, 71–72, 89, 90.

[47] Because of the breadth of the injunction issued in this case, we are not called upon to determine what functions are reasonably within the scope of the practice authorized by the Patent Office. The Commissioner has issued no regulations touching upon this point. We note, however, that a practitioner authorized to prepare patent applications must of course render opinions as to the patentability of the inventions brought to him, and that it is entirely reasonable for a practitioner to hold himself out as qualified to perform his specialized work, so long as he does not misrepresent the scope of his license.

We have not overlooked respondent's constitutional arguments, but find them singularly without merit. We have already noted the source of Congress' power to grant patent rights. It has never been doubted that the establishment of the Patent Office to process patent applications is appropriate and plainly adapted to the end of securing to inventors the exclusive right to their discoveries, nor can it plausibly be suggested that by taking steps to authorize competent persons to assist in the preparation of patent applications Congress has exceeded the bounds of what is necessary and proper to the accomplishment of this same end. Cf. *Goldsmith* v. *United States Board of Tax Appeals,* 270 U. S. 117; *United States* v. *Duell,* 172 U. S. 576. Congress having acted within the scope of the powers "delegated to the United States by the Constitution," it has not exceeded the limits of the Tenth Amendment despite the concurrent effects of its legislation upon a matter otherwise within the control of the State. "Interference with the power of the States was no constitutional criterion of the power of Congress. If the power was not given, Congress could not exercise it; if given, they might exercise it, although it should interfere with the laws, or even the Constitution of the States." II Annals of Congress 1897 (remarks of Madison). The Tenth Amendment "states but a truism that all is retained which has not been surrendered." *United States* v. *Darby,* 312 U. S. 100, 124; *Case* v. *Bowles,* 327 U. S. 92, 102. Compare *Miller, Inc.,* v. *Arkansas,* 352 U. S. 187. The authority of Congress is no less when the state power which it displaces would otherwise have been exercised by the state judiciary rather than by the state legislature. Cf. *Pennsylvania R. Co.* v. *Public Service Comm'n,* 250 U. S. 566. Finally, § 31 contains sufficient standards to guide the Patent Office in its admissions policy to avoid the criticism that Congress has improperly delegated its powers to the ad-

ministrative agency. *Fahey* v. *Mallonee,* 332 U. S. 245; *Currin* v. *Wallace,* 306 U. S. 1, 16–18.

It follows that the order enjoining petitioner must be vacated since it prohibits him from performing tasks which are incident to the preparation and prosecution of patent applications before the Patent Office. The judgment below is vacated and the case is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*