17-3842-cv
*Pappas v. Philip Morris, Inc.*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

---

August Term, 2018

Submitted: November 5, 2018    Decided: February 12, 2019

Docket No. 17-3842-cv

---

HAZEL B. PAPPAS, INDIVIDUALLY AND AS ADMINISTRATIX AND SOLE BENEFICIARY OF THE ESTATE OF JAMES PAPPAS, CASSANDRA PAPPAS, MARKOS PAPPAS,

*Plaintiffs-Appellants,*

— v. —

PHILIP MORRIS, INC., AKA PHILIP MORRIS USA, AKA PHILIP MORRIS USA INC.,

*Defendant-Appellee.*

---

B e f o r e :

LYNCH and HALL, *Circuit Judges,* and ENGELMAYER, *District Judge.**

---

Hazel B. Pappas, *pro se*, seeks to pursue several Connecticut state-law liability claims against Philip Morris, Inc., on behalf of the estate of her late

---

* Judge Paul A. Engelmayer, of the United States District Court for the Southern District of New York, sitting by designation.

husband, who died of respiratory and heart diseases after years of smoking Marlboro cigarettes. The district court dismissed certain of Pappas's claims, holding that Connecticut law would not allow her to represent the estate *pro se*, and dismissed her other claims on the ground that they were barred by the statute of limitations. The order of the district court is AFFIRMED in part and VACATED in part, and the case is REMANDED for further proceedings.

---

Hazel B. Pappas, *pro se*, Cassandra Pappas, *pro se*, New Haven, CT; Markos Pappas, *pro se*, Berlin, NH, *for Plaintiffs-Appellants*.

Keri L. Arnold, Arnold & Porter Kaye Scholer LLP, New York, NY; Paul W. Rodney, Arnold & Porter Kaye Scholer LLP, Denver, CO, *for Defendant-Appellee.*

---

GERARD E. LYNCH, *Circuit Judge*:

Plaintiff-Appellant Hazel B. Pappas ("Pappas") seeks to bring several Connecticut law claims, *pro se*, against Defendant-Appellee Philip Morris, Inc. ("Philip Morris"), on behalf of the estate of her late husband, who died of respiratory and heart diseases after years of smoking Marlboro cigarettes, manufactured by Philip Morris. The United States District Court for the District of Connecticut (Alvin W. Thompson, *J.*) dismissed Pappas's complaint, holding that certain of her claims were barred by the statute of limitations and that she could not bring the remaining claims *pro se*, since with respect to those claims she

2

was representing not herself, but the estate of her late husband. Pappas appealed. For the reasons that follow, we VACATE the dismissal of Pappas's claim under the Connecticut Product Liability Act ("CPLA"), her derivative claim for loss of spousal consortium, and the claim of Plaintiffs-Appellants Cassandra and Markos Pappas for loss of parental consortium, and REMAND for further proceedings. We AFFIRM the district court's order in all other respects.

## BACKGROUND

Acting *pro se*, Pappas filed a products liability suit against Philip Morris in the district court pursuant to its diversity jurisdiction, asserting claims both on her own behalf and on behalf of her late husband's estate, of which she is Administratix. She alleges that in or about the late 1950s, her late husband, James Pappas, was lured into cigarette smoking by a marketing strategy and conspiracy among tobacco companies to glamorize smoking and portray it as a normal and non-dangerous part of American culture. For over five decades, James Pappas smoked Marlboro cigarettes manufactured by Philip Morris. As a result of smoking cigarettes, James Pappas contracted respiratory and heart diseases that led to his death on June 19, 2013, at the age of 79. In or about March 2016, a medical professional informed Pappas that James Pappas's smoking Marlboro

cigarettes caused and aggravated the respiratory and heart disease that killed him.

On June 15, 2016, Pappas, and her two children with James, Cassandra and Markos Pappas, filed a complaint stating claims against Philip Morris for (1) violating the CPLA, Conn. Gen. Stat. § 52–572m, et seq., and Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42–110a, et seq., ("CUTPA"); (2) loss of spousal consortium; (3) loss of parental consortium; and (4) negligent infliction of emotional distress ("NIED"). In support of Pappas's ability to litigate the action *pro se*, Cassandra and Markos Pappas filed disclaimers of interest in their father's estate, and Pappas filed an affidavit stating that to her knowledge James Pappas has no known creditors or debtors. As a result, Pappas contends that she is the sole beneficiary of James Pappas's estate.

The district court held a hearing to determine, among other things, whether Pappas could represent the estate *pro se.* After briefing by the parties, the district court dismissed Pappas's, Cassandra's, and Markos's complaint under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). *Pappas v. Philip Morris USA Inc.*, No. 3:16-cv-932(AWT), 2017 WL 6629298 (D. Conn. June 21, 2017).

4

The district court dismissed Pappas's CPLA claim, which belongs to James Pappas's estate, on the ground that Pappas could not bring that claim *pro se.* The court held that because it was sitting in diversity jurisdiction, it had to apply Connecticut law to the question of whether Pappas could represent the estate *pro se*, and under *Ellis v. Cohen*, 982 A.2d 1130 (Conn. App. Ct. 2009), she could not do so. *Ellis* explains that under Connecticut law, a litigant may appear *pro se* only to represent her own cause, and that individuals may not appear *pro se* when they are suing in a representative capacity. *Id*. at 1133. The district court rejected the applicability of a Second Circuit case, *Guest v. Hansen*, 603 F.3d 15 (2d Cir. 2010), in which this Court held that the administrator of an estate could represent the estate *pro se* under certain conditions, on the grounds that *Guest* was decided under New York law. The district court also dismissed Pappas's loss of spousal consortium claim, and Cassandra's and Markos's loss of parental consortium claims, on the ground that those claims were derivative of the dismissed CPLA claim.

The district court also dismissed the CUTPA claims and NIED claims as time-barred by their respective three- and two-year statutes of limitations. The district court further ruled that, even if the CUTPA claims were not time-barred,

5

Pappas's CUTPA claims would still fail because the CPLA, not CUTPA, provides the exclusive remedy under Connecticut law for a party seeking recompense for injuries caused by a product defect.

Having thus dismissed all the claims in the complaint, the district court ordered the case closed. Pappas and her children moved to amend the judgment under Fed. R. Civ. P. 59(e), asserting numerous arguments. The district court denied the motion. Pappas and her children timely appealed.

## DISCUSSION

We write to correct the district court's error in applying Connecticut law to the question of whether Pappas can represent the estate of her late husband *pro se*, an issue we review de novo. *See Principal Nat'l Life Ins. Co. v. Coassin*, 884 F.3d 130, 134 (2d Cir. 2018).

## I.     The Conflict Between Federal and Connecticut Law

Connecticut law and federal law appear to conflict on the issue of whether Pappas can represent the estate *pro se*. In *Guest,* this Court held that a *pro se* plaintiff could represent an estate when the plaintiff is the estate's only beneficiary and the estate has no creditors. 603 F.3d at 21. Contrary to the district court's belief, that holding was not based on New York law. Although the

6

jurisdiction of the *Guest* Court was based on diversity of citizenship, and the Court applied New York law to the substantive issues before it, *id*. at 21–22, the portion of the *Guest* opinion discussing whether the estate could be represented by a *pro se* litigant relied exclusively on 28 U.S.C. § 1654 and federal cases governing the practice of law in federal courts, referencing New York law only to identify the nature of the substantive claims being pursued. *Id*. at 20–21.

The *Guest* holding was rooted in § 1654. That statute provides that "[i]n all courts of the United States the parties may plead and conduct their own cases personally or by counsel as [permitted] by the rules of such courts, respectively." 28 U.S.C. § 1654. As the Court explained, § 1654 limits parties to pleading and conducting their *own* cases personally, because "the law contains so many esoteric pitfalls for an untrained advocate . . . that the risk of inadvertent waiver or abandonment of an issue is too high for us to allow a *pro se* litigant to represent another person." *Guest*, 603 F.3d at 20. Nevertheless, the Court continued, when the administrator and sole beneficiary of an estate with no creditors seeks to appear *pro se* on behalf of the estate, she is in fact appearing solely on her own behalf, because she is the only party affected by the disposition of the suit. *Id*. at 21. Under those circumstances, the assignment of the sole beneficiary's claims to

a paper entity—the estate—rather than to the beneficiary herself, is only a legal fiction. *Id*.

Connecticut law apparently provides otherwise. In Connecticut, "a person who has not been admitted as an attorney . . . shall not . . . [p]ractice law or appear as an attorney-at-law for another, in any court of record in [Connecticut]," Conn. Gen. Stat. Ann. § 51–88(a), and Connecticut state courts have interpreted that statute to prohibit *pro se* representation of an estate. *See e.g.*, *Milner v. Beckett Corp.*, No. HHDCV115035597S, 2012 WL 527628, at *3 (Conn. Super. Ct. Jan. 25, 2012) ("[T]he plaintiff could not, in a pro se capacity, represent his father's estate."); *Sedich v. Waynik*, No. CV 970348505S, 1998 WL 328043 at *1 (Conn. Super. Ct. June 15, 1998) ("An administrator is the personal representative of the estate and its beneficiaries and cannot bring a suit as a pro se.") (internal quotations marks omitted). In *Ellis*, 982 A.2d at 1133–34, the Appellate Court of Connecticut held that the executor of an estate has no right of self-representation, and thus an executor's *pro se* appearance in court on behalf of the estate constituted the unauthorized practice of law.[1] Because Connecticut law and

---

[1] We note that no Connecticut court has addressed the narrow question of whether there is an exception to the rule that a *pro se* litigant can only represent herself, where the *pro se* litigant seeks to represent an estate that has no creditors

8

federal law are in conflict on this point, we must decide which applies in the case before us.

## II.     The *Erie* Doctrine

The district court held that it was required to apply Connecticut law on this question under the rule of *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938). In *Erie,* the Supreme Court construed the Rules of Decision Act, § 34 of the Judiciary Act of 1789, which provides that: "[t]he laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply." 28 U.S.C. § 1652. *Erie* stands for the proposition that, as a general matter, a federal district court sitting in diversity jurisdiction must apply the *substantive* law of the state in which it sits. *See Erie*, 304 U.S. at 78.

However, the Constitution also vests Congress with the power "[t]o

---

and of which she is the only beneficiary. Connecticut cases all state the rule banning *pro se* litigants from representing anyone other than themselves in absolute terms, *see e.g., Expressway Assocs. II v. Friendly Ice Cream Corp. of Connecticut*, 642 A.2d 62, 64 (Conn. App. Ct. 1994), and we found no case suggesting the existence of any exceptions. Under the circumstances, we assume, as do the parties, that the district court correctly interpreted Connecticut law as not recognizing the exception adopted as a matter of federal law in *Guest*.

constitute Tribunals inferior to the supreme Court" and "[t]o make all Laws which shall be necessary and proper for carrying into Execution" that power. U.S. Const. art I, § 8, cls. 9, 18. Thus, while "Congress has no power to declare substantive rules of common law applicable in a state," *Erie*, 304 U.S. at 78, "*Erie* and its offspring cast no doubt on the long-recognized power of Congress to prescribe housekeeping rules for federal courts even though some of those rules will inevitably differ from comparable state rules," *Hanna v. Plumer*, 380 U.S. 460, 473 (1965); *see Erie*, 304 U.S. at 72–73 ("[T]he purpose of [section 34] was merely to make certain that, in all matters *except those in which some federal law is controlling*, the federal courts exercising jurisdiction in diversity of citizenship cases would apply as their rules of decision the law of the state . . . .") (emphasis added).

*Erie* and its progeny thus require us to reconcile two different edicts: the command that federal courts must honor applicable state substantive law on the one hand, and the integrity of the federal courts as an independent judicial system on the other. *See* 19 Charles Alan Wright et al., Fed. Prac. & Proc. Juris. § 4501 (3d ed.). Where state and federal law are in conflict, we reconcile those principles by asking whether the federal law or rule "regulate[s] matters rationally capable of classification as procedure." *Shady Grove Orthopedic Assocs.,*

*P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 406 (2010) (internal quotation marks omitted); *accord Hanna*, 380 U.S. at 472 ("[T]he constitutional provision for a federal court system (augmented by the Necessary and Proper clause) . . . includes a power to regulate matters which, though falling within the uncertain area between substance and procedure, are rationally capable of classification as either."). Procedure is "the judicial process for enforcing rights and duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction of them," *Hanna*, 380 U.S. at 464, while substantive law is the law that governs the rights and obligations of individuals within a given jurisdiction, s*ee Shady Grove*, 559 U.S. at 407. When deciding what law to apply in federal court, we also consider whether disregarding the law that would control in state court would significantly affect the result of the litigation in federal court. *See Hanna*, 380 U.S. at 466. That "outcome-determination test," however "cannot be read without reference to the twin aims of the *Erie* rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws." *Id*. at 468.

III.   **Federal Law Governs Legal Practice Before the Federal Courts**

The district court misread both *Erie* and *Guest* in concluding that

Connecticut's rule controlled the circumstances in which a party may appear *pro se* in federal court. We now make explicit what was implicit in *Guest:* that § 1654, and federal rules interpreting it, are procedural in nature and therefore must be applied by federal courts in diversity cases. Who may practice law before a federal court is a matter of procedure—which Congress and the federal courts have the power to regulate—notwithstanding contrary state law.

Federal courts have discretion to adopt such rules as are necessary to carry out the business of the courts. *See Frazier v. Heebe*, 482 U.S. 641, 645 (1987); Fed. R. Civ. P. 83. That authority includes the regulation of admissions to a court's own bar. *Frazier*, 482 U.S. at 645. "The authority to adopt rules relating to admission to practice before the federal courts was delegated by Congress to the federal courts [by] Section 35 of the Judiciary Act of 1789 . . . now codified as 28 U.S.C. § 1654." *Brown v. McGarr*, 774 F.2d 777, 781 (7th Cir. 1985). Thus, while "attorneys practicing in federal court are charged with . . . the duty to conform to the state code of professional responsibility," *Shabbir v. Pakistan Int'l Airlines*, 443 F. Supp. 2d 299, 306 (E.D.N.Y. 2005), district courts have the "right and duty . . . to regulate the proceedings and the counsel who come before [them]," *In re September 11 Litig.*, 236 F.R.D. 164, 172 (S.D.N.Y. 2006).

The Seventh Circuit said as much in *Elustra v. Mineo*, 595 F.3d 699 (7th Cir. 2010). In *Elustra*, the Court had to determine the validity of a motion filed by a non-lawyer mother on behalf of her minor and adult daughters, after the daughters' lawyers had been discharged. *Id*. at 703–04. The Court recognized that its first decision was whether it should look to state or federal law to resolve the problem. *Id*. at 704. It noted that, "[o]n the one hand, Fed. R. Civ. P. 17(b) provides that 'capacity to sue' is defined by state law." *Id*. But, on the other hand, federal courts are entitled to use their own procedures, whether jurisdiction is based on a federal question or on another ground such as diversity of citizenship or supplemental jurisdiction. *Id*. The Court noted that the validity of a motion filed by a non-attorney representative had "less to do with the capacity to sue than it does with the right to act in court, which is normally a matter regulated by the rules of professional conduct." *Id*. Because "[f]ederal courts have the inherent authority to adopt their own rules . . . federal law [] dictate[d] whether [the mother] was entitled to act for one or more of her three daughters in the way that she did." *Id*.

Indeed, district courts regulate, by means of their local rules, who may practice before them. For example, District of Connecticut Local Civil Rule 83.1 is

13

titled "Admission of Attorneys." Its subsection (a) states that:

> Any attorney of the Bar of the State of Connecticut or of the bar of any United States District Court, whose professional character is good, may be admitted to practice in this Court upon a Petition for Admission, in form and substance prescribed by subsection (b) of this Rule, after paying the admission fee, taking the proper oath, and signing the Roll of Attorneys Admitted to the Bar of the United States District Court for the District of Connecticut.

Subsection (d) also regulates the admission of visiting attorneys by motion. The District of Connecticut thus does not require attorneys appearing before it to be licensed to practice in Connecticut state courts.

The ability of federal courts to regulate those who appear before them cannot be controlled by state law. "The two judicial systems of courts, the state judicatures and the federal judiciary, have autonomous control over the conduct of their officers, among whom . . . lawyers are included." *Theard v. United States*, 354 U.S. 278, 281 (1957) (lawyers admitted to practice in federal court are not automatically disbarred when the state disbars them); *see United States v. Dinitz*, 538 F.2d 1214, 1219 (5th Cir. 1976) ("Since attorneys are officers of the courts before which they appear, such courts are necessarily vested with the authority, within certain limits, to control attorneys' conduct."). Both we and the Supreme

14

Court have recognized those principles.

In *Spanos v. Skouras Theatres Corp.*, 364 F.2d 161 (2d Cir. 1966), we had to determine whether a California lawyer who represented a client in federal court in New York, but was not admitted to practice law in either New York state courts or in the federal district court, could recover attorney's fees from his client. The client, who was trying to avoid paying his former lawyer, argued that, under the circumstances of the case, the New York courts would refuse to grant recovery to the lawyer. *Id*. at 165. We rejected that argument, however, holding that "it is within the power of the federal government to determine who will be permitted to practice in its courts and that this includes allowing compensation for services rendered in regard to litigation in the federal courts," even when the attorney would not be able to recover in state court. *Id*. That is so because "the rules of the federal courts concerning admission of attorneys have long recognized that experts in federal law should be permitted, when appropriate, to conduct litigation in the federal courts regardless of whether they have been admitted to practice in the state in which the court sits." *Id*. at 166.

The Supreme Court itself has recognized the same principle. In *Sperry v. State of Florida ex rel. Florida Bar*, 373 U.S. 379, 381 (1963), the plaintiff was a

Florida resident registered to practice before the United States Patent Office ("USPO"), but not admitted to practice law in Florida, or indeed in any other state. The Florida Bar instituted proceedings against him in the Supreme Court of Florida, alleging that he was engaged in the unauthorized practice of law because although he was not a member of the Florida Bar, he, *inter alia*, maintained an office in Florida, held himself out to the public as a Patent Attorney, represented Florida clients before the USPO, and rendered opinions as to patentability. *Id*. The Florida Bar sought to enjoin the plaintiff from performing such acts within the state. *Id*. The Supreme Court of Florida concluded that the plaintiff's conduct did constitute the unauthorized practice of law, which the state could properly prohibit acting under its police power, and that neither federal statute nor the federal Constitution "empowered any federal body to authorize such conduct in Florida." *Id*. at 382.

The United States Supreme Court reversed, holding that Congress had provided the Commissioner of Patents with the ability to prescribe regulations governing the recognition and conduct of agents, attorneys, and other persons representing applicants before the Patent Office. *Id*. at 384, 404. The Court reasoned that "registration in the Patent Office confers a right to practice before

16

the Office without regard to whether the State within which the practice is conducted would otherwise prohibit such conduct." *Id*. at 388. *See also Servidone Constr. Corp. v. St. Paul Fire & Marine Ins. Co.*, 911 F. Supp. 560, 574 (N.D.N.Y. 1995) ("There is, of course, no question that the right to practice in federal court includes the right to appear there not withstanding state laws which regulate the practice of law.") (citation omitted).

Federal courts routinely regulate who can appear in federal court (and how they can appear) in ways that promote efficient court administration and the orderly administration of justice without infringing on state-created substantive rights. *See, e.g., Merchant Cash & Capital, LLC v. Progressive Rent A Car, Inc.*, 16 Civ. 3720 (AMD) (VMS), 2018 WL 4268908, at *2–3 (E.D.N.Y. Aug. 15, 2018) (applying federal law to conclude that a *pro se* plaintiff could not represent a corporation while applying New York law to the underlying substantive claims); *Avent v. State Farm Fire and Cas. Co.*, No. 5:16-CV-278-BO, 2017 WL 4171971, at *2 (E.D.N.C. Sept. 20, 2017) (noting that *pro se* plaintiff attempting to litigate on behalf of estate would need to show that she is the only beneficiary of the estate and that the estate has no creditors); *Georgiades v. Martin-Trigona*, 729 F.2d 831, 834 (D.C. Cir. 1984) (applying federal law to conclude that the defendant's son,

who was not a lawyer, could not be admitted to represent the defendant).

Similarly, several federal courts have explicitly concluded that § 1654 is a procedural rule, and have therefore applied it notwithstanding contrary state law. *See, e.g., United States v. Louisiana*, 751 F. Supp. 608, 614 (E.D. La. 1990) ("As a federal court of competent jurisdiction over this case . . . this Court has both the federal statutory and inherent judicial power to resolve who may be permitted to appear before it and how appearances before it may be conducted. . . . Thus, neither state statutes nor state courts can be dispositive of any dispute over representation of a party in this federal court case."); *Western Life Ins. Co. v. Nanney,* 296 F. Supp. 432, 440 (E.D. Tenn. 1969) ("[N]o provision of Tennessee law regulating the practice of law in the state courts could obstruct in any way such practice under the rules of a federal court, 28 U.S.C. § 1654. In the light of any incompatibility between Tennessee law and the aforecited federal statute, state law must yield to the federal legislation.").

Connecticut's substantive law will not be affected by permitting Pappas to file motions, conduct depositions, or represent the estate at trial. Nothing about Connecticut's rule disallowing *pro se* litigants from representing an estate, or about the reasoning of *Ellis*, indicates to us that the rule advances any important

18

Connecticut policy other than the orderly administration of its own court system. Moreover, the district court erred in distinguishing *Guest* as a case "decided under New York law." *Pappas*, 2017 WL 6629298, at *3. As documented above, the ruling in *Guest* was based on federal law.

Allowing a *pro se* plaintiff to represent an estate does come with its own set of concerns. As we explained in *Guest*, 603 F.3d at 20, and in other cases, *see e.g., Jones v. Niagara Frontier Transp. Auth.*, 722 F.2d 20, 22 (2d Cir. 1983), litigation by a non-lawyer creates unusual burdens not only for the party she represents but also for her adversaries and the court. But that a *pro se* plaintiff may have difficulty navigating the complex legal process and that it may pose an extra burden on the court, gives us no reason to believe that this federal rule encroaches on any Connecticut substantive law, would give rise to forum shopping, or would occasion the inequitable administration of the laws. *See Hanna*, 380 U.S. at 468. The rule pertains solely to the orderly conduct of litigation before the federal court, and does not regulate the conduct of persons in the community. It is procedural—not substantive—and therefore a matter of federal law even in a diversity case.

## IV.  Other Claims

The district court dismissed Pappas's loss of spousal consortium claim, and Cassandra's and Markos's loss of parental consortium claims, solely on the ground that those claims were derivative of the CPLA claim, which was dismissed due to Pappas's *pro se* status. Our reversal of the dismissal of the CPLA claim necessarily reinstates the derivative consortium claims.

Pappas makes no arguments on appeal with regard to the district court's dismissal of her CUTPA and NIED claims as time-barred. She has therefore abandoned those claims, and we accordingly affirm their dismissal.

## CONCLUSION

For the reasons stated above, we VACATE the judgment of the district court, insofar as it dismissed Pappas's claims under the CPLA and the derivative consortium claims, and AFFIRM the order of the district court, insofar as it dismissed Pappas's other claims on statute of limitations grounds.