322 So.2d 25 (1975)
THE FLORIDA BAR, Petitioner,
v.
Marco Tulio ESCOBAR, Respondent.
No. 44004.
Supreme Court of Florida.
July 24, 1975.
Norman K. Schwarz, Leonard Rivkind, Miami Beach, David W. Walters, Miami, Clifford L. Davis, Asst. Staff Counsel, and Richard C. McFarlain, Asst. Director, Tallahassee, for petitioner.
Franklin D. Kreutzer, Wallace, Kreutzer & Breslow, Miami, for respondent.
PER CURIAM.
This cause is before us on the petition of The Florida Bar filed pursuant to Article XVI of the Integration Rule and charging Respondent with the unauthorized practice of law. Article II, Section 2, of the Integration Rule provides:
"2. No person shall engage in any way in the practice of law in this state unless such person is an active member of The Florida Bar in good standing except that a practicing attorney of another state, in good standing, who has professional business in a court of record of this state may, upon motion, be permitted to practice for the purpose of such business only, when it is made to appear that he has associated and appearing with him in such business an active member of The Florida Bar."
*26 Our jurisdiction to prohibit the unauthorized practice of law stems from Article V, Section 15, Florida Constitution, which provides that this Court "shall have exclusive jurisdiction to regulate the admission of persons to the practice of law... ." This constitutional authority necessarily includes the power to prevent the unauthorized practice of law.[1]
We issued a Rule to Show Cause, to which Respondent filed his answer; thereafter, this Court appointed Judge Francis X. Knuck as Referee and directed that he hold such hearings and take such testimony as might be necessary to establish the facts of the case. After a hearing the Referee entered the following findings of fact:
"1. That this cause was properly brought before this Referee pursuant to the applicable provisions of the Florida Constitution and the Integration Rules of the Supreme Court.
"2. That Respondent, MARCO TULIO ESCOBAR, is not, and was not, at any time pertinent hereto licensed to practice law in the State of Florida or in any other jurisdiction of the United States. That said Respondent is sui juris and was at all times pertinent hereto a resident of Dade County, Florida.
"3. That it appeared from testimony taken that in the year 1972, Respondent, MARCO TULIO ESCOBAR, represented himself to one MARIA TRINIDAD GALDAMES, a/k/a MARIA TRINIDAD GOMEZ to be an attorney-lawyer in connection with said MARIA TRINIDAD GALDAMES seeking to obtain legal permission to remain in the United States under the applicable Immigration Laws.
"4. In connection therewith, the Respondent obtained for MRS. GALDAMES the `police card' for the usual fee of $2.00 and an additional $10.00 fee for servicing and did then and there advise MRS. GALDAMES that said card was in lieu of an immigration visa extension and was better proof of residence.
"5. That in connection with such pronouncements by Respondent, MRS. GALDAMES relied upon the legal advice given by Respondent concerning the laws of immigration and necessity of having a police card in lieu of immigration visas etcetera.
"6. That all during this time, MRS. GALDAMES was led to believe by Respondent that he was a person trained in the field of law and was permitted, by law, to perform such legal services as MRS. GALDAMES required.
"7. Additional testimony was taken from KARLA TERESA LOPEZ MORALES, who testified that she was directed to Respondent for the purpose of being assisted in obtaining immigration extensions and visas. That upon meeting Respondent he examined her passport, required MRS. LOPEZ to leave it with him and to pay him a fee of $40.00 for him to get an extension on her behalf.
"8. Upon inquiry by MRS. LOPEZ, Respondent advised that he was a lawyer, and that he could obtain extensions because he worked with immigration.
"9. On several occasions thereafter, MRS. LOPEZ requested return of her passport from Respondent, to which Respondent replied that it was necessary for him to keep in connection with his efforts to obtain an immigration extension and visa for MRS. LOPEZ.
"10. MRS. LOPEZ further stated that on numerous occasions he discussed with Respondent the possibility of staying in the United States under different and separate immigration quotas. Respondent *27 further showed documents to the effect that he was authorized to arrange visas, weddings and residences and that he was a `Notario Publico.'
"11. That in connection with the supposed efforts of Respondent, MRS. LOPEZ paid additional sums of money all for naught.
"12. That neither MRS. GALDAMES or MRS. LOPEZ received any services, either legal or otherwise from Respondent in connection with the payments made.
"13. Notwithstanding the two incidents in which the Respondent received monies, no services, either legal or otherwise were performed on behalf of the said witnesses although said payments were made to Respondent upon the belief of said witnesses that Respondent was in fact a lawyer and/or Notario Publico, to-wit: an attorney licensed to practice law.
"14. That the Respondent by holding himself out to the public as being qualified (legally), to handle immigration matters and to perform said services requiring legal services and familiarity with the laws of the United States concerning immigration and such failure to do so properly may cause irreparable harm to the person dealing with Respondent, such harm consisting of deportation, criminal indictment and/or pecuniary law [loss?].
"15. That he offered no witnesses but offered into evidence Plaintiff's exhibits 1, 2, 3, and 4, being telephone books, newspaper and magazine advertising and Notary Public advertising."
Additionally, the Referee made the following recommendations:
"A. That Respondent, MARCO TULIO ESCOBAR, did, in fact, hold himself out to be an attorney within the meaning of such definition to the persons from whom he obtained remuneration and such holding out and payment constituted the unauthorized practice of law in the State of Florida.
"B. That said Respondent, MARCO TULIO ESCOBAR, be enjoined, restrained and otherwise restricted in engaging in the type of work described, to-wit: immigration law for any person or persons with or without payment thereof, or from holding himself out to perform such services for any person or persons within the State of Florida.
"C. That the Supreme Court of this State, based upon the foregoing allegations find that the Respondent was in contempt of court and so adjudicate Respondent.
"D. The Respondent be fined for such contempt of Court and that such further punishment be imposed as the court shall deem necessary and appropriate under the circumstances."
The record and the report of the Referee have been examined by this Court. We hereby approve the Referee's finding of guilt and agree that the foregoing conduct on Respondent's part constitutes the unauthorized practice of law. Furthermore, we adopt the Referee's recommendation that Respondent be held in contempt of court and assess a fine against him in the amount of two hundred and fifty dollars ($250.00) to be paid to the Clerk of this Court plus the costs of these proceedings. It is further ordered that Respondent, Marco Tulio Escobar, be and hereby is permanently enjoined from engaging in the acts complained of and from otherwise engaging in the unauthorized practice of law in the State of Florida.
It is so ordered.
ADKINS, C.J., and ROBERTS, BOYD, OVERTON and ENGLAND, JJ., concur.
NOTES
[1] State ex rel. Florida Bar v. Sperry, 140 So.2d 587 (Fla. 1962), judgment vacated on other grounds, 373 U.S. 379, 83 S.Ct. 1322, 10 L.Ed.2d 428 (1963).