317 So.2d 721 (1975)
THE FLORIDA BAR, Petitioner,
v.
Aguedo LUGO-RODRIGUEZ, Respondent.
No. 44006.
Supreme Court of Florida.
July 30, 1975.
Alfred D. Bieley, Miami, Leonard Rivkind, Miami Beach, David W. Walters, Miami, Richard C. McFarlain, Asst. Director, and William B. Wiley, Asst. Staff Counsel, Tallahassee, for petitioner.
Melvyn Kessler, Miami, for respondent.
PER CURIAM.
This cause is before us on the petition of The Florida Bar filed pursuant to Article XVI of the Integration Rule and charging Respondent with the unauthorized practice of law. Article II, Section 2, of the Integration Rule provides:
"2. No person shall engage in any way in the practice of law in this state unless such person is an active member of The Florida Bar in good standing except that a practicing attorney of another state, in good standing, who has professional business in a court of record of this state may, upon motion, be permitted to practice for the purpose of such business only, when it is made to appear that he has associated and appearing with him in such business an active member of The Florida Bar."
Our jurisdiction to prohibit the unauthorized practice of law stems from Article V, Section 15, Florida Constitution, which provides that this Court "shall have exclusive jurisdiction to regulate the admission of persons to the practice of law... ." This constitutional authority necessarily includes the power to prevent the unauthorized practice of law.[1]
We issued a Rule to Show Cause, to which Respondent filed his motion to dismiss for lack of jurisdiction, arguing that this Court does not have jurisdiction to prohibit activities in this state constituting the practice of law in the field of immigration, naturalization and related matters, since that is an area which has been pre-empted by federal legislation. Briefs were filed by both parties, and upon consideration thereof this Court denied Respondent's *722 motion to dismiss. Thereafter, Respondent filed his answer, whereupon this Court appointed Judge Francis X. Knuck as Referee and directed that he should hold such hearings and take such testimony as might be necessary to establish the facts of the case. After a hearing the Referee entered the following findings of fact:
"1. This cause is properly brought by the Petitioner according to the provisions of The Florida Constitution and the Integration Rules of The Supreme Court of Florida.
"2. That the Respondent is sui juris, a resident of Dade County, Florida and is not and never has been licensed to practice law in the State of Florida.
"3. That during the year 1971, Respondent met one Carmen Enriqueta Ortega de Carlos, formerly known as Carmen Enriqueta Otero, at the house where Miss Otero was working and he represented to Miss Otero that he could get her a permit to remain in the United States although she was a citizen of Guatemala here in the United States on vacation.
"4. That the Respondent told Miss Otero that he was able to get her this permit because of the fact that he was a Notary, which to her meant a person who could arrange to get papers so that she could stay in this country.
"5. That said Miss Otero understood the word `Notary' to mean one who takes care of legal matters and documents, similar to a lawyer or attorney.
"6. That initially, said Miss Otero paid the Respondent $60.00 to obtain an extension for her to remain in this country and carried on her contacts with the Respondent from May of 1971 through September of the same year, at which time he also arranged for her to marry an individual for the purpose of remaining here in the United States.
"7. That the Respondent brought around certain kind of legal papers that she had to sign and her husband had to sign, for the purpose of having a Petition for Residency in the United States, for which she paid the Respondent the sum of $800.00 and as the witness put it, `to fix her papers for her.' This money was paid by said witness, Miss Otero, to the Respondent in order for the Respondent to effectuate a change of her immigrant status from that of a tourist to a permanent resident.
"8. The witness indicated that although she had paid the Respondent this money so that he should get her the residency which he promised her, in fact he never got her anything and this was obtained through another `Notary.'
"9. I find further, that the Respondent gave Miss Otero legal advice and counsel as to her immigrant status and told her of the means by which he had intended to effectuate the change in her legal status from tourist to resident.
"10. I find that the Respondent is not listed in the United States Department of Justice or the Immigration Department as an attorney or representative.
"11. I further find that the Petitioner is authorized to bring this proceeding by virtue of appropriate action by the Board of Governors of The Florida Bar.
"12. That the Respondent obtained $800.00 from Miss Otero for the purpose of effectuating a change of her immigrant status in the United States, when in fact he had not performed as promised.
"13. I find also, that the Respondent introduced Miss Otero to her present husband as part of a scheme for her to remain in this country, all of which is contrary to the law as made and provided.
"14. I further find that on occasion of Miss Otero's dealings with the Respondent, *723 the Respondent filled out forms on her behalf pertaining to applications for permanent residence and other immigration matters.
"15. That the witness Otero believed she could obtain an extension from the Immigration & Naturalization Service by virtue of the activities of the Respondent Lugo.
"16. I find further that the testimony of Eusebia Montero Vides y Martinez was adduced before me while under subpoena and she indicated she met the Respondent in 1970 relative to obtaining extensions or stays from leaving the United States.
"17. I further find that Mrs. Vides conferred with him in her employer's house where she was working as a maid, relative to her immigration problems and the matter of obtaining extensions for her, at which time the Respondent advised Mrs. Vides that he would charge her $70.00 for obtaining for her a six-month extension.
"18. I further find that the Respondent took the witness Vides to the Immigration Department and acted as her attorney; in a conference with the investigator for the Immigration authorities, a Mr. O'Kon, the witness believed that the Respondent had connections with the Immigration Department and could prepare the necessary papers for her, which in fact he did and later on, charged her an additional sum, to-wit: $400.00 for obtaining permanent residency for said witness which the Respondent told the witness he could perform by preparation of certain papers on her behalf.
"19. The witness further understood that the Respondent was a `Notary' and with the witness' limited fourth-grade education and educational barrier, she was of the opinion that a `Notary' as she understood it in her native country (Colombia), was one who signed documents and took care of important papers and made out deeds.
"20. The witness further testified that the Respondent filled out documents for her relative to her immigration problem and took her to see an investigator for the United States Department of Justice, Immigration & Naturalization Service, a Mr. O'Kon, at which time he assisted her in connection with obtaining an extension of time and obtaining residency in the United States.
"21. I find further, from the testimony of the witness J. Russell Bramlett, as follows:
"a) Mr. Bramlett is a staff investigator for The Florida Bar.
"b) That Mr. Bramlett is an expert in the field of Immigration matters.
"c) That said witness Bramlett was familiar with the Code of Federal Regulations relative to definition of attorney and representative, as used in the Section of the United States Code and the Code of Federal Regulations as entered into evidence.
"d) That Mr. Bramlett was of the opinion that the Respondent represented the two ladies who testified before me, in connection with applications for permanent residence and under the law, he would be considered as a Representative in the eyes of the Immigration Service for the efforts that he performed on behalf of the ladies, but that he in fact, never filed a certificate or appearance on either case on behalf of the two ladies, whose testimony was taken before the undersigned.
"e) That in fact the witness Bramlett was familiar with and knew the Respondent prior to the hearing held before me, from the time of 1970 or 1971 and although the Respondent accepted fees from both of these ladies, an examination of their Immigration file failed to *724 reveal any document which appeared to have been prepared by the Respondent.
"22. Notwithstanding the fact that the Respondent failed to testify, the uncontradicted evidence adduced before the undersigned indicates that the Respondent held himself out to the public in general and these two ladies in particular, as a `Notary' and one qualified to handle Immigration matters.
"23. I further find that the preparation of forms to effect a change of immigrant status requires legal training and familiarity with the Immigration Laws and Statutes of the United States and the failure to properly prepare and file such documents may and can result in deportation of the individual or individuals involved.
"24. I find that by the completion of official Immigration forms by the Respondent and/or the collection of fees as herein described, suggests to the individuals involved that the Respondent was a Notary; that he was competent and qualified to attend to such legal matters; and could fully advise, counsel and protect such individuals seeking his assistance."
Additionally, the Referee made the following recommendations:
"1. That the Respondent AGUEDO LUGO-RODRIGUEZ, be found to have engaged in the unauthorized practice of law within the State of Florida.
"2. That the Respondent AGUEDO LUGO-RODRIGUEZ, be restrained and enjoined from the further preparation of Immigration and Naturalization forms for others, with or without charge; from advertising or holding himself out to perform said services; from otherwise engaging in the practice of law in the State of Florida.
"3. That the Respondent AGUEDO LUGO-RODRIGUEZ, be and he is found to be in contempt of The Supreme Court of the State of Florida.
"4. That the Respondent AGUEDO LUGO-RODRIGUEZ, be fined for such contempt of Court and that such other further punishment be imposed as this Honorable Court deems necessary and appropriate under the circumstances.
"5. That the costs of these proceedings be assessed against the Respondent AGUEDO LUGO-RODRIGUEZ."
The record and the report of the Referee have been examined by this Court. We hereby approve the Referee's finding of guilt and agree that the foregoing conduct on Respondent's part constitutes the unauthorized practice of law. Furthermore, we adopt the Referee's other recommendations, find that Respondent is in contempt of this Court and assess a fine against him in the amount of one thousand dollars ($1,000.00) to be paid on or before August 31, 1975, to be paid to the Clerk of this Court plus the costs of these proceedings in an amount to be assessed by The Florida Bar. It is further ordered that Respondent, Aguedo Lugo-Rodriguez, be and he hereby is permanently enjoined from engaging in the acts complained of and from otherwise engaging in the unauthorized practice of law.
It is so ordered.
ADKINS, C.J., and ROBERTS, BOYD, OVERTON and ENGLAND, JJ., concur.
NOTES
[1] State ex rel. Florida Bar v. Sperry, 140 So.2d 587 (Fla. 1962), judgment vacated on other grounds 373 U.S. 379, 83 S.Ct. 1322, 10 L.Ed.2d 428 (1963).