PER CURIAM.
We are asked to review a referee’s report in Bar discipline proceedings, wherein it was recommended that respondent Penn be suspended from the practice of law for twelve months and thereafter until he proves his rehabilitation, and for an indefinite period until he submits satisfactory medical evidence that he is physically and emotionally capable of resuming the practice of law. The referee also recommended that he be placed on the inactive list and not be reconsidered for removal therefrom until he submits satisfactory medical evidence that he is physically and emotionally capable of resuming the practice of law.
On November 12,1974, Penn sent a letter on his legal stationery to the Tenneco Chemical Company seeking assistance in intervening in a bond validation proceeding. The letter stated in part:
“1. The Public and You need to make contributions to keep your defenses from Governmental Center Authority falling on its face. $500 to $1500 court costs and $5000 ‘reputable attorney’ fees or expenses are needed to stop this continuing raid and competition by Government upon Production. Bernard J. Penn is serving as Intervenor-Appellant on behalf of the individual taxpayer and citizen, and stands ready to coordinate and to do any legal thing to win the legal and political battle.
“8. I urge you to consult your own attorney promptly with reference to paying part of the costs of defending and then let me have $500 or one percent of *980 your 1973 tax bill toward above costs and expenses, . . .
This letter was also sent to the local offices of Southern Bell, Chemistrand, Gulf Power, St. Regis Paper Company and Armstrong Cork Company.
Penn did not deny sending the letter but stated he did so as an individual citizen. Penn has insisted that he was not acting as an attorney seeking a case, but was soliciting funds to be used in retaining an attorney with experience in bond validation proceedings. He concedes that the letter was improper but denies bad faith or improper motives.
Penn does not and has not maintained a separate trust account, although he does have an office account. This is a joint checking account with his wife, constituting joint tenancy with right of survivorship. Penn insists that he handles no trust funds, but he did handle cases which involved trust funds. Funds were deposited which should have been placed in a “trust account.” There is no charge or evidence which shows misappropriation of funds.
The Florida Bar also attacked the competency of Penn, contending that Penn did not limit his practice to simple uncontested matters as claimed by him. Admittedly, Penn was suffering from physical and emotional problems, but Penn blames this condition upon the grievance machinery of the Bar. The record does not contain any complaint by Penn’s clients.
We have carefully examined the record and the report. It is our judgment that the referee’s finding of fact and recommendations of guilt are not, in all respects, supported by clear and convincing evidence in the record. We consider first the letter sent by Penn, which could be construed as either a solicitation for funds for Penn himself, or solicitations of funds for the purpose of retaining another attorney. In our opinion the record is clear that Penn intended to bring other counsel into the case and use the solicited funds for that purpose. The letter was improper, but not of such impropriety as to warrant a suspension.
Also, the failure to maintain a trust account and placing trust funds in an account which would be payable to his wife upon death was improper. Nor do we believe that this impropriety, under the circumstances of this case, was sufficient ground for suspension.
Finally, we reach the question of competency. There has been no proven theft or criminal misconduct by Penn shown in the record. It is true that an attorney may be placed upon the inactive list because of “incapacity or other infirmity” even though no misconduct on his part is alleged or proved. Florida Bar Integration Rule 11.01(4).
The primary complaint of the Bar was that Penn handled legal matters “beyond his capabilities,” and that he should be placed on the inactive list. The referee based his findings upon the testimony of three judges. The judges testified that Penn’s attitude had improved and indicated he was capable of satisfactorily handling simple domestic, collection, or property matters. He often exhibited a persecution complex, according to the judges, which hampered his work. Penn says his problems with the grievance committee were sufficient to cause him to exhibit such a persecution complex.
Assume that a person who is trained in the civil field inexpertly handles a criminal case. This would not necessarily subject such attorney to disciplinary proceeding. As stated by one of the judges in his testimony,
“I believe he is competent to handle some matters. Some complicated cases, I don’t think he would be as competent. Of course, that’s true of many lawyers.
“He seems to do an adequate job in domestic relations cases. He’s had some success in criminal matters. However, in some criminal cases, I believe he failed to make use of criminal rules which would have been of benefit to his clients.”
*981 There is no clear and convincing evidence that Penn is incapable of practicing law because of incapacity or other infirmity. Because of the improprieties of circulating the letter and failing to maintain a proper trust account, Penn should be disciplined. It is the judgment of this Court that this opinion shall constitute a public reprimand of respondent Bernard J. Penn, and further that, respondent shall create and maintain a trust account in accordance with the provisions of Florida Bar Integration Rule 11.02(4).
The costs of these proceedings in the amount of $730.50 are hereby assessed against the respondent.
It is so ordered.
OVERTON, C. J., and ADKINS, BOYD, ENGLAND and HATCHETT, JJ., concur.