PER CURIAM.
This attorney-discipline proceeding is before the Court on the complaint of The Florida Bar, the report of a referee, and the petitions of both parties for review. Our jurisdiction and procedure are governed by article V, section 15, Florida Constitution and article XI, Rule 11.09 of the Integration Rule of The Florida Bar.
The Florida Bar filed a two-count complaint against respondent Bernard J. Penn. The first count charged violations of Disciplinary Rules 1-102(A)(4), 1-102(A)(5), 1-102(A)(6) and 6-101(A) of the Code of Professional Responsibility for improperly retaining a legal fee where no legal services were performed and for improperly requiring a client to sign a release. The second count charged respondent with violating article II, section 2, of the Integration Rule of The Florida Bar by engaging in the practice of law in Florida while not an active member in good standing of The Florida Bar.
The referee made the following findings and recommendations:
FINDING OF FACT AS TO COUNT I
Having observed the demeanor of the participants, listened to their testimony and reviewed the exhibits, your Referee finds:
1. Mary Reed on or about February 17, 1979, accompanied her brother, Sylvester H. Steele, to Respondent’s law office in Pensacola, Florida.
2. Mr. Steele wanted to speak with the Respondent regarding a quitclaim deed he, Mr. Steele, had signed on or about September 1, 1965. The deed had been received through the mail from another sister, Agnes Sullivan.
3. Mrs. Reed was not a party to the quitclaim deed signed by Mr. Steele and had no intentions on February 17, 1979, of retaining the Respondent. Notwithstanding this, the Respondent required Mrs. Reed to execute the contingency fee employment contract along with Mr. Steele. Upon its execution, Mr. Steele advanced the Respondent $500.00 as “court costs, and binder for initial fee on this cause”.
4. Subsequent to February 17, 1979, and after talking with her son-in-law about what she had done, Mrs. Reed and Mr. Steele returned to Respondent’s office and she advised Respondent she *499 wanted to withdraw. At that point in time Mr. Steele decided to withdraw also. The Respondent then prepared what he called a release which is dated March 1, 1978 (the actual date was March 1, 1979). The release stated that Mrs. Reed owed her brother, Mr. Steele, $250.00 for dropping her case. The release further allowed the Respondent to retain the $500.00 advanced by Mr. Steele as a fee and for liquidated damages.
5.Notwithstanding the Respondent’s denial, the release was not voluntarily signed and was in fact signed under threat.
CONCLUSION AS TO COUNT I
On its face a suit was barred on the 1965 quitclaim deed and the facts clearly and convincingly establish that the Respondent improperly and unethically retained the legal fee advanced by Mr. Steele and improperly and unethically required Mrs. Reed and Mr. Steele to sign the release. In so doing he violated DR 1-102(A)(4), DR 1-1-2(A)(5) (sic) and DR 1-102(A)(6).
RECOMMENDATION ON GUILT OR
INNOCENCE AS TO COUNT I
It is the recommendation of your Referee that the Respondent, Bernard J. Penn, be found guilty of professional misconduct justifying disciplinary measures for violating DR 1-102(A)(4), DR 1-102(A)(5) and DR 1-102(A)(6).
AS TO COUNT II
Count II charged that the Respondent on May 19,1979, was retained by Frances Phair to initiate bankruptcy proceedings on behalf of her and her husband. On June 5,1979, the Supreme Court of Florida suspended the Respondent as an active member of the Florida Bar. The Respondent argued he was not made aware of this suspension until June 13, 1979. Between May 19, 1979, and June 11, 1979, Mrs. Phair paid the balance due Respondent for fees and costs. On August 1, 1979, the Respondent filed the Phairs’ petitions for bankruptcy. Through August 27, 1979, the Respondent had never advised the Phairs of his suspension as an active member of The Florida Bar.
FINDING OF FACT AS TO COUNT II
Having observed the demeanor of the participants, listened to their testimony and reviewed the exhibits, your Referee finds:
1. On May 19, 1979, the Respondent agreed to represent the Phairs in their personal voluntary proceeding for bankruptcy and a $40.00 retainer was paid leaving a balance due of $410.00.
2. By June 11, 1979, the balance due on attorney fees and costs were paid.
3. On June 5, 1979, the Florida Supreme Court suspended Respondent indefinitely from the practice of law in the State of Florida and struck his name from the roll of attorneys.
4. On or about the 1st of July, 1979, the Phairs received from the Respondent a blank bankruptcy form which they completed.
5. The completed bankruptcy petitions were filed on August 1, 1979.
6. Up through that date the Respondent had not advised the Phairs that he had been suspended from the practice of law.
7. On August 28, 1979, the Phairs received from the Respondent a letter dated August 27, 1979, in which he advised them that he had been suspended from the practice of law and that they would be on their on (sic) at the bankruptcy hearing. The date of the bankruptcy hearing was August 29, 1979.
8. The Respondent admitted on the morning of August 29, 1979, that he had known for quite some time about his suspension and the Respondent advised Mr. Phair that Respondent wanted a release getting his name off of all the paper work.
9. The Phairs attended the bankruptcy hearing in proper person.
*500 10. The Respondent cites the case of In re the matter of Ruffolo, 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968), which he feels authorized him to continue legal representation of the Phairs at the Federal Court level. The Referee finds said case is not applicable to this matter.
CONCLUSION AS TO COUNT II
On June 5,1979, the Supreme Court of Florida suspended the Respondent indefinitely from the practice of law in the State of Florida. Even if you accept the Respondent’s argument that the Order was not served on him until June 13, 1979, it is nonetheless an inescapable fact that the Respondent held himself out to the Phairs as their attorney in the bankruptcy proceedings through at least August 28, 1979.
RECOMMENDATION ON GUILT OR INNOCENCE AS TO COUNT II
It is the recommendation of your Referee that the Respondent, Bernard J. Penn, be found guilty of violating Article II, Section 2, Integration Rule of The Florida Bar by engaging in the practice of law in this State while he was not an active member of The Florida Bar in good standing.
FINDING AS TO PAST DISCIPLINARY MEASURES
In the matter of The Florida Bar v. Penn, 351 So.2d 979, (1977), the Supreme Court upon review of a Referee’s report publicly reprimanded Respondent, Bernard J. Penn, for certain improprieties. Additionally, the costs of those proceedings in the amount of $730.50 were assessed against the Respondent. The Respondent failed to pay those costs and as a result thereof was suspended indefinitely from the practice of law in the State of Florida and had his name stricken from the roll of attorneys for failure to pay those costs.
RECOMMENDATION AS TO DISCIPLINARY MEASURES
In view of the Respondent’s prior disciplinary record, your Referee recommends that the Respondent be required to pay the costs of these proceedings as a prior condition to satisfactorily passing the Multi-State professional Responsibility Examination which is presently required for admission to The Florida Bar before his name can be returned to the roll of attorneys.
The respondent contends that the referee’s findings of fact are erroneous. We conclude that the findings relating to Count I are not clearly erroneous and are supported by competent and substantial evidence. The Florida Bar v. Baron, 392 So.2d 1318 (Fla.1981); The Florida Bar v. McCain, 361 So.2d 700 (Fla.1978); The Florida Bar v. Hirsch, 359 So.2d 856 (Fla.1978). We therefore uphold the referee’s findings of fact, conclusions and recommendations of guilt as to Count I.
As to Count II, however, we find that the referee erred. Penn was charged with engaging in the practice of law in Florida while not an active member of The Florida Bar in good standing by giving legal advice and representing clients in a pending federal bankruptcy proceeding subsequent to his suspension by this Court. While it is true that admission to practice before a federal court is derivative from membership in a state bar, suspension or disbarment by a state does not result in automatic suspension or disbarment by the federal court without some affirmative action by the federal court. In re Ruffalo, 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117, reh’g denied, 391 U.S. 961, 88 S.Ct. 1833, 20 L.Ed.2d 874 (1968). The record clearly reflects that the respondent was still a member in good standing of the Bar of the United States District Court for the Northern District of Florida when he was representing the Phairs in the bankruptcy proceeding. He thus was appearing before a court wherein he was authorized to practice. This Court has, however, enjoined practice in the federal sector where the *501 respondent was neither a member of The Florida Bar nor of any federal court. The Florida Bar v. Escobar, 322 So.2d 25 (Fla.1975); The Florida Bar v. Moreno-Santana, 322 So.2d 13 (Fla.1975); The Florida Bar v. Flowers, 320 So.2d 809 (Fla.1975); The Florida Bar v. Lugo-Rodriguez, 317 So.2d 721 (Fla.1975); and The Florida Bar v. Scussel, 240 So.2d 153 (Fla.1970). Such is not the ease before us. We therefore do not uphold the referee’s findings that respondent violated article II, section 2 of the Integration Rule of The Florida Bar.
The Bar’s petition for review of the referee’s report urges that the respondent be disbarred. The referee recommends that respondent be required to pay the costs of these proceedings as a prior condition to satisfactorily passing the multi-state professional responsibility examination which is presently required for admission to The Florida Bar before his name can be returned to the roll of attorneys. We are of the view that these recommended disciplines do not meet the factors set forth in State ex rel. Florida Bar v. Murrell, 74 So.2d 221,227 (Fla.1954), wherein this Court said: “The judgment in a case like this must have these factors in mind: (1) it must be just to the public and it must be designed to correct any anti-social tendency on the part of respondent as well as deter others who might tend to engage in like violations; (2) it must be fair to respondent at the same time the duty of the court to society is paramount.”
Respondent was first disciplined by this Court in 1977 when he received a public reprimand. The Florida Bar v. Penn, 351 So.2d 979 (Fla.1977). Respondent was ordered to pay the costs of those disciplinary proceedings in the amount of $730.50. He failed to obey the Court’s order to pay costs and was suspended indefinitely from the practice of law in June 1979. In this case, the finding of misconduct and respondent’s prior disciplinary record do not occupy that rung of the ladder reserved for those most serious breaches of ethical conduct which warrant disbarment. “[Djisbarment is the extreme measure of discipline and should be resorted to only in cases where the láwyer
demonstrates an attitude or course of conduct wholly inconsistent with approved professional standards. It must be clear that he is one who should never be at the bar, otherwise suspension is preferable.” Murrell at 223; see also The Florida Bar v. Hirsch, 342 So.2d 970 (Fla.1977); The Florida Bar v. Pahules, 233 So.2d 130 (Fla.1970); State ex rel. The Florida Bar v. Dunham, 134 So.2d 1 (Fla.1961).
The discipline recommended by the referee is inadequate. Requiring the respondent to satisfactorily pass the multi-state professional responsibility examination and to pay the costs of these proceedings does little in the way of providing justice to the public, correcting the anti-social tendencies of the respondent or deterring other attorneys from similar conduct. Instead, we suspend respondent, Bernard J. Penn, from the practice of law for six months and thereafter with proof of rehabilitation necessary for reinstatement. This suspension will run consecutively to that already imposed.
The costs of these proceedings in the amount of $1,802.71 are hereby assessed against the respondent.
It is so ordered.
ALDERMAN, C.J., and ADKINS, OVER-TON and EHRLICH, JJ., concur.
BOYD, Justice concurring:
I concur with majority except that I would adopt the referee’s report.