376 S.E.2d 169

**Mary V. REHMANN, Petitioner,**

v.

**Hon. Elliott E. MAYNARD, Judge of the Circuit Court of Mingo County, Respondent.**

No. 18774.

Supreme Court of Appeals of West Virginia.

Dec. 21, 1988.

---

Mary V. Rehmann, APALRED, Williamson, for petitioner.

Dina M. Mohler, Asst. Atty. Gen., for respondent.

MILLER, Justice:

In this original proceeding in prohibition, we are presented with the question of whether an attorney employed by a legal services program funded by the federal government to provide legal assistance in civil matters can lawfully be required to accept appointments to represent indigent criminal defendants. For the reasons that follow, we grant a writ of prohibition to prohibit the enforcement of the court order appointing the petitioner to represent an indigent criminal defendant.

I.

The record reveals that the petitioner, Mary V. Rehmann, is employed as a staff attorney for the Appalachian Research and Defense Fund, Inc. (ARDF), in its Williamson, West Virginia office. The ARDF is a nonprofit, publicly funded legal services program which provides legal services to income eligible clients on civil matters.

On September 27, 1988, the respondent, the Honorable Elliott E. Maynard, Judge of the Circuit Court of Mingo County, called a meeting of the Mingo County Bar Association to announce a change in his policy regarding the appointment of attorneys to defend indigent criminal defendants. The long-standing policy had been to exempt attorneys from criminal appointments in Mingo County for a number of reasons. According to the respondent judge's affidavit, this exemption included attorneys who had been practicing for more than fifteen years, attorneys employed full time by the ARDF and similar organizations, the prosecuting attorney, assistant prosecuting attorneys, and any law partner of a prosecutor or assistant prosecutor.

The respondent judge stated at the September bar association meeting and in a subsequent affidavit that he had found this policy to be unfair and oppressive to those attorneys who accepted criminal appointments. In 1987, eleven attorneys had handled all the criminal appointments for Mingo County, which involved nearly 600 criminal matters, not counting juvenile and mental hygiene appointments.

To eliminate this perceived hardship, the respondent judge announced at the bar association meeting his intention to change the appointment policy and to begin placing all available attorneys on the appointment

list and assign them criminal cases in rotation. The only exemption would be for the prosecuting attorney, assistant prosecutors, and their law partners, who would not be required to accept appointments because of obvious conflict of interest problems. *See State ex rel. Sowa v. Sommerville*, 167 W.Va. 353, 280 S.E.2d 85 (1981). This change increased the number of available attorneys to represent indigent criminal defendants from eleven to eighteen.

The petitioner was present at the bar association meeting and informed the respondent judge that she was, as a legal services attorney, prohibited by federal law from representing criminal defendants. The respondent judge informed her that there would be no exceptions to the policy, and that she would not be exempted from criminal appointments without a court order.

On October 4, 1988, Milton Ogle, the Director of the ARDF, responded to a letter from the petitioner and advised her that "[f]ederal law and Board policy preclude your accepting *any* criminal appointments, and/or any other appointments in civil matters unless they are made pursuant to a statute, rule or practice applied generally to all lawyers practicing in the area."

In a subsequent letter, the respondent judge indicated that he disagreed with the petitioner's interpretation of federal law and stated that he did not believe any applicable federal law or regulation would exempt her from the rotation, if her appointment was made pursuant to a State law or practice applied generally to all attorneys practicing in the circuit court. He stated that there was a desperate need for attorneys to do this work and expressed the opinion that since the other lawyers were doing their fair share at great sacrifice, he could not perceive how the petitioner could expect to do less in good conscience. The

respondent judge further stated that he would not exempt her from the assignment of criminal appointments, absent a court order from the West Virginia Supreme Court of Appeals or a federal court.

On October 19, 1988, the petitioner received a standard form indicating that the respondent judge had on October 17, 1988, appointed her to represent a defendant in a criminal case. The petitioner then sought a writ of prohibition from this Court, and we granted a rule to show cause to consider the legality of the petitioner's appointment.

## II.

We touched on this issue in *State ex rel. Kearns v. Fox*, 165 W.Va. 421, 268 S.E.2d 65 (1980), which involved two attorneys, employed by a federally funded program, who had been appointed to represent a juvenile charged with an offense by a criminal warrant issued by a magistrate. The attorneys sought a writ of prohibition from this Court and argued that federal regulations prohibited the acceptance of a fee-generating case. We rejected this argument without any extended discussion, but we did acknowledge that "to the extent that there is a federal statute or regulation in this regard, the courts of this State must yield to that law." 165 W.Va. at 424, 268 S.E.2d at 67.[1]

When Congress passed the Legal Services Corporation Act of 1974 (Act), 42 U.S.C.S. § 2996, *et seq.* (1974), as an amendment to the Economic Opportunity Act of 1964, 42 U.S.C.S. § 2701, *et seq.* (1964), it created the Legal Services Corporation (LSC), a nonprofit corporation, "for the purpose of providing financial support for legal assistance in noncriminal proceedings or matters to persons financially unable to afford legal assistance." 42

---

1. Unfortunately, the *Kearns* decision created some confusion about whether legal services attorneys paid by federal funds can be appointed as counsel for indigent criminal defendants. This Court met in administrative conference in September, 1980, and determined that such attorneys should not be appointed because of the prohibition contained in 42 U.S.C.S. § 2996f(b)(2) (1974). A memorandum from the Administrative Director of this Court dated September 11, 1980, was sent to all circuit court judges at our direction to clarify the law on this matter. It does not appear that this memorandum was brought to the attention of the respondent judge, as the petitioner did not become aware of the memorandum's existence until after oral arguments in this Court.

U.S.C.S. § 2996b(a) (1974). The LSC was authorized to provide financial assistance to qualified programs furnishing legal assistance to eligible clients and to make grants and to award contracts to nonprofit organizations for the purpose of providing legal assistance to eligible clients. 42 U.S.C.S. § 2996e(a)(1)(A) (1974).

Congress placed the following limitation on the use of LSC funds in 42 U.S.C.S. § 2996f(b)(2) (1974):

"Limitations on uses. No funds made available by the Corporation under this title, either by grant or contract, may be used ... to provide legal assistance with respect to any criminal proceeding, except to provide assistance to a person charged with a misdemeanor or lesser offense or its equivalent in an Indian tribal court[.]"

Another portion of the Act, 42 U.S.C.S. § 2996e(d) (1977) provides as follows:

"Miscellaneous prohibitions.

\*　　\*　　\*　　\*　　\*　　\*

"(6) Attorneys employed by a recipient shall be appointed to provide legal assistance without reasonable compensation only when such appointment is made pursuant to a statute, rule or practice applied generally to attorneys practicing in the court where the appointment is made."

Congress has explicitly provided in Section 2996f(b)(2) (1974), as quoted above, that LSC funds may not be utilized to provide legal assistance in criminal matters, with a narrow exception for nonfelony cases in an "Indian tribal court." There is no dispute that ARDF is a "recipient" of

LSC funds and that the petitioner is a "staff attorney" within the meaning of the Act.[2]

The Senate Conference Report also shows that Congress intended to place a general prohibition on the use of LSC funds in criminal cases:

"Both the House bill and the Senate amendment prohibited funds to be used by grant or contract for the provision of legal assistance with respect to a criminal proceeding.

"The conferees understand 'criminal proceedings' to refer to proceedings brought by the Government of the United States or any of the States. It is not the intent of the conferees to prohibit representation of Indians charged with misdemeanor offenses in tribal courts, as distinct from criminal charges in Federal or State courts. Due to the unique legal problems encountered by Indians on reservations, this provision should not be construed to limit representation of Indian clients in tribal courts such as is now being provided in certain legal services programs on Indian reservations." S.Con.Rep. 93–247, 93rd Cong., 2d Sess., reprinted in 1974 U.S.Code Cong. & Admin.News 3872, 3897, 3906.

The respondent judge contends that he is authorized to appoint the petitioner to criminal cases under the language of 42 U.S.C.S. § 2996e(d) (1977) and the accompanying federal regulation, 45 C.F.R. § 1613.-4(a) (1978). This regulation has language authorizing appointments under conditions equal to all lawyers. It contains a caveat that the local agency must find such appointment consistent with its goals.[3] Coun-

---

**2.** 42 U.S.C.S. § 2996a (1974) defines these terms as follows:

"As used in this title the term—

\*　　\*　　\*　　\*　　\*　　\*

"(6) 'recipient' means any grantee, contractee, or recipient of financial assistance described in Clause (A) of section 1006(a)(1) [42 U.S.C.S. § 2996e(a)(1)(A) (1974) ];

"(7) 'staff attorney' means an attorney who receives more than one-half of his annual professional income from a recipient organized solely for the provision of legal assistance to eligible clients under this title[.]"

**3.** 45 C.F.R. § 1613.4 (1978) promulgated by LSC provides, in part:

"Legal assistance may be provided with respect to a criminal proceeding.

"(a) Pursuant to a court appointment made under a statute or court rule or practice of equal applicability to all attorneys in the jurisdiction, if authorized by the recipient after a determination that it is consistent with the recipient's primary responsibility to provide legal assistance to eligible clients in civil matters[.]"

45 C.F.R. § 1613.4(b) (1978) provides another limited area for criminal representation which is not at issue in this case: "When professional

sel for the respondent judge argues that this regulation authorizes criminal appointments of legal services attorneys where the appointments are made pursuant to a rule or practice applied to all attorneys practicing in the court where the appointment is made.

There is some divergence of view in the few cases that have been decided in this area as to whether the language of 45 C.F.R. § 1613.4(a) (1978) has applicability to criminal appointments. The court in *Mid–Missouri Legal Serv. Corp. v. Kinder*, 656 S.W.2d 309, 311 (Mo.App.1983), concluded that "the purpose of the act is stated to be to provide financial support for legal assistance in non criminal proceedings.... [S]uch section has no application to appointments in criminal cases...."[4]

On the other hand, in *Central Florida Legal Serv., Inc. v. Perry*, 406 So.2d 111, 113 (Fla.App.1981), the court assumed that if the local legal service "determined that such representation is consistent with [its] primary responsibility," then representation may be authorized. This view is supported in *Central Florida Legal Serv., Inc. v. Eastmoore*, 517 F.Supp. 497, 500 (M.D.Fla.1981) ("[T]he CFLS attorneys may not represent criminal defendants in light of the CFLS determination that it does not have sufficient resources to devote to a criminal proceeding."). We believe this is a more realistic view of 45 C.F.R. § 1613.4(a) (1978).

In the present case, however, it is clear that ARDF, by formal resolution dated December 8, 1978, and revised on April 25, 1986, "has not found criminal representation to be consistent with [its] primary responsibilities to provide legal assistance to eligible clients in civil matters."[5] Therefore, we conclude under the foregoing law that a circuit judge is prohibited by 42 U.S.C.S. § 2996f(b)(2) (1974) and 45 C.F.R. § 1613.4 (1978) from appointing an attorney employed by a local legal services program that receives funds from the federal Legal Services Corporation to represent an indigent criminal defendant, where the local legal services program has made a formal policy determination that such criminal representation is inconsistent with its primary responsibility to provide legal assistance to eligible clients in civil matters.

We, therefore, grant the writ of prohibition prayed for and our initial order staying the enforcement of the order appointing the petitioner to a criminal case is hereby made absolute.

WRIT GRANTED.

---

responsibility requires representation in a criminal proceeding arising out of a transaction with respect to which the client is being, or has been, represented by a recipient."

**4.** Although not an issue in this case, in *Kinder*, 656 S.W.2d at 311, the court rejected the argument that the appointment could be upheld under the inherent power of the court:

"The state also contends that the circuit court has the inherent power to appoint attorneys to represent indigents accused of a crime. That is undoubtedly the law. However, in this case the power of the state must yield to the limitation imposed by Congress on the expenditure of funds derived from the Legal Services Corporation. As stated in *Sperry v. Florida*, 373 U.S. 379, 384, 83 S.Ct. 1322, 1325, 10 L.Ed.2d 428 (1963) the law of the state must yield when it is incompatible with Federal legislation."

**5.** The memorandum continues as follows:

"Absent such a finding, staff attorneys are prohibited by the Legal Services Corporation Act from providing legal assistance in criminal matters by court appointment or otherwise. The problem persists, however, and judges still on occasion attempt to appoint ARDF attorneys to criminal representations.

"We hereby state our objections to these appointments which place Legal Services attorneys in positions of having to refuse because of their obligations to uphold federal law. Further, given the limited amount of resources available to ARDF to provide legal services to low income West Virginians, we find criminal representations to be inconsistent with our primary responsibility to provide civil legal services."