**UPJOHN COMPANY, Plaintiff**

v.

**MOVA PHARMACEUTICAL CORP., Defendant.**

**Civil No. 95–1378(PG).**

United States District Court, D. Puerto Rico.

Sept. 4, 1996.

Arturo Díaz–Angueira, San Juan, PR; Gerald Sobel & Steven J. Glassman, New York City; and Raymond G. Arner & William G. Jameson, the Upjohn Company, Kalamazoo, MI, for plaintiff.

David C. Indiano, San Juan, PR; Ronald Grudziecki, Eric H. Weisblatt and Allen R. Baum, Alexandria, VA; and James S. Rubin, Regulatory Counsel, West New York, NJ, for defendant.

### *OPINION AND ORDER*

PEREZ–GIMENEZ, District Judge.

Upjohn has moved the Court to compel the production of certain information which Mova asserts is privileged. For the reasons stated herein, Upjohn's motion is **GRANTED** with the caveats set forth below.

### Background

This case involves Mova's alleged infringement of Upjohn's "'163 patent," a product used by persons suffering from diabetes. Mova seeks to manufacture and market a generic version, and defends this suit on the dual grounds of non-infringement and non-validity of the '163 patent.

■ Upjohn's infringement claim is based, at least in part, on the "doctrine of equivalents." *See Hilton Davis Chemical Co. v. Warner–Jenkinson Co., Inc.*, 62 F.3d 1512 (Fed.Cir.1995), *cert. granted*, —— U.S. ——, 116 S.Ct. 1014, 134 L.Ed.2d 95 (1996). Although hardly a model of clarity,[1] the "doctrine of equivalents" essentially provides patent protection from bogus "innovations" which, though literally non-infringing, represent insubstantial departures from the patented claim. *Id.* at 1518.

■ Mova readily admits that its Abbreviated New Drug Application ("ANDA") submission and the '163 patent are similar. In fact, Mova claims that the two are bioequivalent. Mova further admits that it developed the ANDA submission by closely studying the '163 patent, and by "designing around" it. Although literally non-infringing products may nonetheless be found to infringe through the doctrine of equivalents, the law permits—indeed encourages—scientists to "design around" the patent. *See id.* at 1520. "Designing around" is possible, of course, because of the broad requirements of the patent disclosure.

The claims of the '163 patent require "spray dried lactose as the preponderant excipient in said composition, being present therein at about not less [than] seventy percent (70%) by weight of the final composition." To develop its generic alternative, Mova scientists communicated extensively with patent counsel in order to develop a non-infringing formulation. Several formulations were proposed, some of which were prototyped and tested. The one finally selected, as detailed in Mova's ANDA, contains "at most 49% spray-dried lactose." The essence of this suit is Upjohn's claim that Mova's ANDA is unsubstantially different from the '163 patent.

To date, Mova has provided complete discovery only with respect to the ANDA formulation. Upjohn, however, has requested information on the entire research and development process, including the formulations and test results on the entire field of "runner-up" formulations which Mova eventually rejected. Upjohn claims that this information is relevant to its infringement claim, and Mova has not made a sustained argument disputing this contention. Rather, Mova asserts that the information is privileged under both the attorney-client privilege and attorney work product doctrines.

### Discussion

■ The Supreme Court's decision in *Upjohn Co. v. United States*, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981), definitively established that corporations may invoke the attorney client privilege and the attendant attorney work product doctrine.[2] Moreover, a lawyer's involvement in the preparation and prosecution of patent applications entails the practice of law. *Sperry v. State of Florida*, 373 U.S. 379, 383, 83 S.Ct. 1322, 1324–25, 10 L.Ed.2d 428 (1963). As the *Upjohn* Court noted, "[i]n light of the vast and complicated array of regulatory legislation confronting the modern corporation, corporations, unlike most individuals, constantly go to lawyers to find out how to obey the law, particularly since compliance with the law in this area is hardly an instinctive matter." *Upjohn*, 449 U.S. at 392, 101 S.Ct. at 684 (internal quotation and citations omitted). Such consultations, the Court held, should be privileged to the same extent, and with the same limitations, as other attorney-client communications. *See id.* at 401, 101 S.Ct. at 688. *But see* Wright & Graham, *Federal Practice and*

---

1. *Hilton Davis*, an *en banc* decision by the Federal Circuit, produced five separate opinions, each devoted to its own exegesis of the "doctrine of equivalents." The Supreme Court has since granted *certiorari*, presumably with an eye toward clarifying this unsettled area of law.

2. The reader should take care to distinguish between Upjohn, the litigant in this case, and *Upjohn* the Supreme Court decision.

*Procedure:* Evidence § 5476 (criticizing the extension of the doctrine to corporations and the *Upjohn* decision).

 The attorney-client privilege protects "communication between attorneys and their clients" in order to promote "full and frank" discussion. *Upjohn,* 449 U.S. at 389, 101 S.Ct. at 682. "The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." *Id.* Similarly, the attorney work product doctrine shields from discovery, with certain exceptions, "written materials obtained or prepared by an adversary's counsel with an eye toward litigation. . . ." *Id.* at 399, 101 S.Ct. at 687 (quoting *Hickman v. Taylor,* 329 U.S. 495, 511, 67 S.Ct. 385, 394, 91 L.Ed. 451 (1947)).

The Court's observation about the non-instinctiveness of the law, though made in the context of the tax code, is equally applicable to the intellectual property issues in this case. After Mova identified Upjohn's '163 patent as a target for a generic competitor, it literally could not proceed further without consulting its lawyer. Mova's research required a properly trained patent attorney to delineate the boundaries of permissible inquiry. The candidate formulations—as well as the one finally submitted to the FDA in Mova's ANDA—were the product of these consultations. Mova argues that the precursor formulations are non-discoverable because advice received from counsel was instrumental in their selection and development. Thus, Mova asserts that the discovery Upjohn seeks would "reveal the substance of attorney client communications." Mova's Opposition at 1.

The *Upjohn* decision makes clear, however, that the attorney-client privilege does not reach so far. In that case, Upjohn's attorneys investigated possible bribery by the company's over-seas offices by distributing questionnaires to managers and interviewing employees. During a subsequent criminal investigation, the government demanded to see the information gathered by Upjohn's attorneys. The court held that the materials were privileged, but specifically limited the scope of the privilege:

The privilege only protects disclosure of *communications;* it does not protect disclosure of the underlying *facts* by those who communicated with the attorney. . . . The client cannot be compelled to answer the question, "What did you say or write to the attorney?" but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney.

*Id.* at 395–96, 101 S.Ct. at 685 (internal quotation omitted). The Court observed that the government was free to obtain the information itself by serving interrogatories on and conducting depositions of the same employees interviewed by Upjohn's attorneys. The Court noted that "a party cannot conceal a fact merely by revealing it to his lawyer." *Id.* at 396 (quotation omitted). The government was simply barred from taking advantage of work already performed by Upjohn's attorneys in anticipation of the litigation.

Here, I recognize that Mova developed the formulations in concert with its attorneys. Moreover, it is true, in a gross sense, that the formulations were prepared in "anticipation of litigation." By definition, however, all "design-around" product development requires such consultations. The goal is to avoid litigation by developing a product that does not infringe upon the "designed-around" patent. A lawyer is integral to the process; but to characterize such interchanges as protected attorney-client communications or work product would pull both doctrines from their respective roots. Permitting the discovery Upjohn seeks would discourage neither prospective attorney-client communications nor attorney diligence, because the information would be generated (and therefore discoverable) regardless of the attorney's involvement. The trial and error testing of prospective formulations will always be integral to research and development. This aspect of the scientific method cannot be immune from discovery simply because an attorney was involved in the process.

Therefore, Upjohn's motion to compel (Dkt. # 52) is **GRANTED IN PART.** Mova must permit testimony and answer interroga-

tories concerning all drug formulations comprising micronized glyburide, including any experimental or developmental formulations leading to the formulation it ultimately submitted to the FDA, as well as produce documents relating to the foregoing. However, the Court notes that all Mova need produce is the requested *information.* Mova is not required to provide "documents which exhibit an attorney's concern with possible future litigation" or which were prepared by Mova for a similar reason. *Weil Ceramics & Glass, Inc. v. Work,* 110 F.R.D. 500, 506 (E.D.N.Y.1986).

With these criteria in mind, the Court has reviewed the 15 withheld documents that Mova has provided for *in camera* inspection. The documents at tabs 1, 2, 3, 4, 6, and 10 must be provided to Upjohn. These documents are not attorney-client communications and are concerned primarily with technical or business information. The tables at tab A must similarly be produced. The documents at tabs 5, 7, 8, 9, 11, 12, 13, and 14 are privileged as they are either attorney work product or attorney-client communications.

**IT IS SO ORDERED.**