**UNITED STATES of America,
John C. Cox, Plaintiffs,**

v.

**COMMONWEALTH OF VIRGINIA,
Defendant.**

**Civil Action No. 97–39–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

July 22, 1997.

the case before the district court." (citing *Young,*     481 U.S. at 801, 107 S.Ct. at 2134–35).

Richard Parker, U.S. Attorney's Office, Alexandria, VA, Janis Claire Kestenbaum, U.S. Dept. of Justice, Civil Div., Washington, DC, for Plaintiffs.

Stephen Urban Baer, Office of the Atty. Gen., Richmond, VA, for Defendant.

## MEMORANDUM OPINION

BRINKEMA, District Judge.

Before the Court are plaintiffs' and defendant's Motions For Summary Judgment. The Court has reviewed the briefs submitted by the parties, and heard oral argument by counsel on July 18, 1997.

### I.

Plaintiffs, the United States of America and John C. Cox, brought this declaratory judgment action under the Supremacy Clause of the U.S. Constitution to enjoin defendant, the Commonwealth of Virginia, from requiring Federal Bureau of Investigation (FBI) contractors to satisfy Virginia statutes and regulations governing private security services in order to be able to conduct background investigations for the FBI in Virginia.

#### A. Factual Background

The federal government requires candidates for sensitive positions and positions that involve access to classified information to undergo background investigations before they begin their jobs. It also requires periodic updates of these clearances. Background investigations serve to develop information that is pertinent to the candidate's or employee's suitability for positions of trust. Specifically, the investigations focus on the individual's character, reputation and loyalty to the United States, in order to ensure that the individual's employment is consistent with the interests of the United States.

In 1990, the FBI instituted the Background Investigation Contract Services (BICS) Program, a nationwide program under which the FBI hires former federal investigators on a contractual basis to conduct some of these investigations. For each investigation, the FBI provides a BICS investigator with information furnished by the applicant or employee. The investigator performs various records checks and contacts some or all of the individual's references, along with the individual's current and former co-workers, supervisors, neighbors, and landlords. The investigator then submits a report to the FBI setting forth the pertinent information gathered during the investigation. The report is reviewed by the FBI to ensure the investigator followed FBI rules and guidelines, and then the report is forwarded to the employing agency which makes the determination of whether or not the individual has "passed" the investigation.

The BICS Program was initiated to address a steadily increasing demand for background investigations, as well as to maximize limited financial resources and enable FBI Special Agents to concentrate on investigating and prosecuting federal crimes, rather than conducting background investigations. Declaration of Francis M. Mulholland, Unit Chief of the BICS Administrative Unit, at ¶¶ 4, 16 (Mulholland Decl.). Plaintiffs contend that since the Program's inception, the demand for background investigations has increased dramatically, especially in Virginia where there is a large concentration of federal employees.

Currently, there are approximately 165 investigators who conduct background investigations in Virginia through the BICS Program. Mulholland Decl. at ¶ 14. Of these investigators, approximately 130 both reside in Virginia and do the vast majority of their work for the FBI in Virginia. The remaining

investigators live in Maryland, but are frequently assigned investigations in Virginia.

On February 24, 1995, responding to an FBI inquiry, Virginia, through its Department of Criminal Justice Services, advised the FBI that independent contractors who work for the FBI in Virginia were subject to its registration and licensing requirements for private security services businesses. To date, however, Virginia has not taken any formal steps to enforce its regulations against the BICS contractors.

Plaintiff John C. Cox worked as a Special Agent with the FBI for 25 years, and joined the BICS program in 1991 after retiring from the FBI. Plaintiff Cox resides in Virginia and performs substantially all of his BICS duties in Virginia. Along with 14 other BICS investigators, he has declared that if he is forced to obtain a Virginia private investigator's registration and/or a Virginia private security services business license, he would stop working for the FBI rather than expend the time and money necessary to obtain the registration and/or license.

### B. Statutory and Regulatory Background

#### i. Federal Law

Under 28 U.S.C. § 533(3), Congress granted broad authority to the Attorney General of the United States to appoint officials to conduct investigations regarding "any official matters under the control of the Department of Justice . . . as may be directed by the Attorney General." The Attorney General, in turn, charged the FBI with responsibility for "[c]onduct[ing] personnel investigations requisite to the work of the Department of Justice and whenever required by statute or otherwise." 28 C.F.R. § 0.85(c). In addition, there are other statutes requiring the FBI to conduct background investigations of federal personnel in specified circumstances.[1]

The FBI, in turn, in exercising its authority to enter into contracts for goods and services, 48 C.F.R. § 1.601, created the BICS Program. The FBI imposes two levels of requirements before hiring a BICS investigator. First, the individual must satisfy the applicable provisions of the Federal Acquisition Regulations (FAR) which govern federal procurement of goods and services. 48 C.F.R. § 1 et seq. The FAR mandate that, before awarding a contract, the agency must determine that an individual is "responsible." 48 C.F.R. § 9.103. The factors to make that determination are spelled out at § 9.104–1. The second level requirement is a determination that the individual be "otherwise qualified and eligible," meaning that he meets standards of loyalty and trustworthiness. These standards are further spelled out in the Statement of Work for the BICS Program.

#### ii. Virginia Law

The Virginia legislature authorized the Criminal Justice Services Board (Board) to establish training, registration, and licensing requirements for the private security services industry in order to "secure the public safety and welfare against incompetent, unqualified, unscrupulous, or unfit persons engaging in the activities of private security services businesses." VA. CODE ANN. § 9–182(B). A "private investigator" must obtain a registration, and a "private security services business" must obtain a license. A private investigator is defined as:

> any person who engages in the business of, or accepts employment to make, investigations to obtain information on (i) crimes or civil wrongs; (ii) the location, disposition, or recovery of stolen property; (iii) the cause of accidents, fires, damages, or injuries to persons or property; or (iv) evidence to be used before any court, board, officer, or investigative committee.

VA. CODE ANN. § 9–183.1. A private security services business is defined as: "any person engaged in the business of providing, or who undertakes to provide . . . private investigators . . . to another person under contract, express or implied." Id.

To obtain a license, an applicant must pay an initial fee of $518 and an annual renewal fee of $250. The business, which in this case would be the individual investigator, must

---

1. See, for example, 5 U.S.C. § 1304(b) (where there is a question about an individual's loyalty to the United States); 22 U.S.C. § 2519 (of Peace Corps volunteers); 42 U.S.C. § 2165(d) (of individuals with access to restricted data at the Department of Energy).

also secure a $25,000 surety bond or general liability insurance with a minimum coverage of $100,000, and retain a compliance agent. The compliance agent must submit fingerprint cards, pay a $41 processing fee, and satisfy other criteria including the completion of training programs at a state-approved school. The Board may deny any license application for "just cause."

To obtain a registration, there is an initial fee of $76 and an annual renewal fee of $35. The individual must also satisfy a list of criteria: (1) be 18 years old; (2) complete the Board's initial and continuing training requirements; and (3) submit fingerprint cards and pay a $41 processing fee.

In addition, the Board's regulations prescribe numerous standards of conduct for compliance agents and private investigators, and the Board may sanction individuals who violate these standards. 6 VA. ADMIN. CODE 20–170, § 270, 970–1000.

## II.

■ At the outset, the Court rejects Virginia's argument that there is no case or controversy because the Commonwealth has not attempted to enforce its statutes and regulations against the BICS investigators. As plaintiffs argue, the standard to be applied in determining if there is a case or controversy ripe for resolution is whether there is "a reasonable threat of prosecution for conduct allegedly protected by the Constitution." *Ohio Civil Rights Comm'n v. Dayton Christian Schs.*, 477 U.S. 619, 626 n. 1, 106 S.Ct. 2718, 2722 n. 1, 91 L.Ed.2d 512 (1986). Plaintiffs contend that in correspondence, telephone conversations, and a meeting with FBI officials, Virginia has consistently and unequivocally asserted that BICS investigators must secure a state license and registration. For example, the Virginia Department of Criminal Justice Services wrote in a February 24, 1995, letter to the FBI that "it remains our opinion that Special Investi-

gators of the FBI who function as independent contractors are in fact subject to the licensing and/or registration requirements for private security services businesses in Virginia." Also, the FBI recently heard reports that Virginia planned to take action to enforce its regulations against the BICS investigators. Mulholland Decl. at ¶ 20. The Court finds that this conduct is sufficient to create a reasonable threat of prosecution, and therefore there is before the Court a ripe case or controversy.

Substantively, the parties' motions involve an interpretation of the Supremacy Clause of the United States Constitution.[2] Specifically, the issue is whether Virginia may impose its statutes and regulations governing private security services on BICS investigators who work exclusively for the FBI within the boundaries of the Commonwealth.

The Supremacy Clause provides that the "Constitution, and the laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. CONST., art. VI, cl. 2. It mandates that "the activities of the Federal Government [be] free from regulation by any state." *Hancock v. Train*, 426 U.S. 167, 178, 96 S.Ct. 2006, 2012, 48 L.Ed.2d 555 (1976).

■ State law is invalid under the Supremacy Clause when there is express or implied preemption. Express preemption results when federal law contains an explicit statement of preemption. *Jones v. Rath Packing Co.*, 430 U.S. 519, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977). Express preemption is not raised in this litigation before the Court. However, preemption may be implied from the federal law's structure and purpose. Implied preemption occurs where any one of the following occurs: (1) there is an outright or actual conflict between federal and state law, *Free v. Bland*, 369 U.S. 663, 82 S.Ct.

---

**2.** As a secondary issue, plaintiffs argue that BICS investigators do not fall within Virginia's statutory definition of "private investigators." Specifically, they claim that BICS investigators do not conduct investigations about crimes or civil wrongs, the location, disposition or recovery of stolen property, or evidence to be used before

any board, officer or investigative committee, and therefore, would not be subject to Virginia's statutes and regulations. However, because Virginia has consistently asserted that BICS investigators are subject to its statutes and regulations, this issue remains open.

1089, 8 L.Ed.2d 180 (1962); (2) compliance with both federal and state law is impossible, *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 83 S.Ct. 1210, 10 L.Ed.2d 248, (1963); (3) Congress has "occupied the field" of regulation, leaving no room for a state to supplement the federal law, *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947); (4) there is an implicit barrier to state regulation in the federal law, *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983); or (5) the state statute forms an obstacle to the accomplishment and execution of Congressional objectives, *Hines v. Davidowitz,* 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581 (1941). *See, Louisiana Pub. Serv. Comm'n v. Federal Communications Comm'n,* 476 U.S. 355, 368–69, 106 S.Ct. 1890, 1898–99, 90 L.Ed.2d 369 (1986). Federal law need not be statutory to preempt state law. Therefore, preemption may result from action taken by a federal agency acting within the scope of its congressionally delegated authority. *Fidelity Federal Sav. & Loan Assn. v. de la Cuesta,* 458 U.S. 141, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982).

In the present case, a type of implied preemption is alleged. Plaintiffs argue that the Virginia statutes and regulations governing private security services, as applied to the BICS investigators, would hinder the accomplishment and execution of the full objectives of federal procurement procedures with respect to the BICS Program. In other words, plaintiffs argue that Virginia law conflicts with FBI procedures in determining whether an individual BICS contractor is qualified and authorized to conduct background investigations on its behalf because Virginia law imposes additional requirements and may have the effect of working as a "virtual review" of the FBI determination.

Federal law establishes the factors the FBI must consider in hiring an individual to participate in the BICS program. 48 C.F.R. § 1 *et seq.* Specifically, the FAR and the Statement of Work establish, among other things: the training and experience a contractor must have to be qualified; the record of integrity and sound judgment that he must possess; and the competence and pro-

fessionalism that he must exhibit. Once the FBI determines that an individual satisfies these criteria, the federal government may authorize that person to conduct background investigations on behalf of the FBI in Virginia. Plaintiffs argue that application of the Virginia regulations at issue would directly undercut this authorization because under the Virginia regulations, an FBI contractor would not be authorized to conduct FBI background investigations in Virginia unless and until Virginia gave him permission to do so.

Plaintiffs point to Supreme Court precedent for the conclusion that the Supremacy Clause prohibits this type of interference with federal activities. They mainly rely on *Leslie Miller, Inc. v. Arkansas,* 352 U.S. 187, 77 S.Ct. 257, 1 L.Ed.2d 231 (1956) (per curiam), in which the Supreme Court addressed the issue of whether a state could impose licensing requirements on a federal contractor retained to perform construction work. The Supreme Court held that the Arkansas licensing law could not be enforced against the federal contractor because it "would give the State's licensing board a virtual power of review over the federal determination of 'responsibility' and would thus frustrate" federal law. 352 U.S. at 190, 77 S.Ct. at 258. According to the plaintiffs, the federal regulations at issue in *Leslie Miller,* the Armed Services Procurement Regulations, contain "identical language in many respects" to the specific FAR governing the BICS program. Specifically, both regulations require that the federal contracting officer determine that the contractor is "responsible" and set forth the same types of factors to be evaluated in making that assessment.

In addition, plaintiffs point to *Sperry v. Florida,* 373 U.S. 379, 83 S.Ct. 1322, 10 L.Ed.2d 428 (1963), in which the Supreme Court held that Florida could not enforce its prohibition on the unauthorized practice of law by non-lawyers against an individual doing business in Florida who, although a non-lawyer, was authorized by the federal government to practice before the U.S. Patent Office. The Supremacy Clause barred the state from reviewing, and potentially vetoing, the federal determination that the individual

was qualified to practice patent law. 373 U.S. at 385, 83 S.Ct. at 1325–26.

Defendant replies that preemption doctrine does not apply in this case because the Virginia statutes and regulations at issue do not conflict with an "an affirmative command of Congress." *See North Dakota v. United States*, 495 U.S. 423, 434, 110 S.Ct. 1986, 1994, 109 L.Ed.2d 420 (1990). Defendant argues that the FAR do not actually conflict with Virginia law, and that one must go beyond the FAR to the FBI's additional standards, namely the Statement of Work, in order to "manufacture an actual conflict." Further, defendant argues that the FBI's Statement of Work is not a properly promulgated, substantive agency regulation which may have preemptive effect over state law. *See Chrysler Corp. v. Brown*, 441 U.S. 281, 295–96, 99 S.Ct. 1705, 1714–15, 60 L.Ed.2d 208 (1979). Rather, the Statement of Work is merely part of a contract between an individual and the FBI.

To distinguish this case from those relied upon by plaintiffs, defendant contends that in *Sperry*, Congress explicitly authorized the Commissioner of Patents to prescribe regulations which would allow non-lawyers to practice before the Patent Office, unlike in this case where there is no clear statement from Congress. According to defendant, the *Leslie Miller* case is distinguishable because, unlike here, the federal contractors were going to work on a federal facility and, therefore, the state's regulations would have a direct effect on federal activity.

Moreover, defendant argues that compliance with Virginia law would not obstruct the FBI and its contractors from performing background investigations. It contends that enforcement of its regulations merely "regulate federal activity in the sense that [it] make[s] it more costly for the Government to do its business," *North Dakota*, 495 U.S. at 434, 110 S.Ct. at 1994, and, the only potential harm to the federal government would be a delay in conducting the background investigations.

■ The Court finds that defendant's argument cannot survive the clear line of federal authority in the BICS program. Congress clearly granted broad authority to the Attorney General to appoint officials to conduct background investigations. 28 U.S.C. § 533(3). In turn, the Attorney General clearly delegated this authority to the FBI. 28 C.F.R. § 0.85(c). The FBI, in exercising its authority, has entered into contracts for goods and services pursuant to 48 C.F.R. § 1.601. The FAR is a set of properly promulgated federal regulations which govern the FBI's determination as to with whom it may enter into contracts. 48 C.F.R. § 1 *et seq*. Under the FAR, the FBI must make a determination of whether an individual contractor is "responsible." 48 C.F.R. § 9.103. Once the FBI, a federal entity, makes its determination that an individual is "responsible" and, thus, qualified to perform work for the federal government, that ends the process. Under clear principles of federal supremacy, a state cannot review that decision. Virginia's law is in conflict with the FAR because it imposes additional requirements on individual contractors who have already been judged qualified by the FBI, and may, in effect, work as a review of the FBI determination.

For these reasons, the Supremacy Clause renders Virginia's laws and regulations governing private security services inapplicable to BICS contractors. Therefore, plaintiffs' Motion for Summary Judgment is granted and defendant's Motion for Summary Judgment is denied.

An appropriate Order will issue.

### ORDER

For the reasons stated in the accompanying Memorandum Opinion, plaintiffs' Motion for Summary Judgment is GRANTED, and it is hereby

ORDERED that defendant be and is permanently enjoined from enforcing Va. Code Ann. §§ 9.182, 9.183, and Va. Regulation § 240–03–2 against Special Investigators in the Federal Bureau of Investigation's BICS program.

Defendant's Motion for Summary Judgment is accordingly DENIED.